Filed 2/27/20  Certified for Publication 3/27/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JENNIFER CURCIO, | B295293 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. 18STRO07928 |
| JULIA PELS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of
Los Angeles County, James E. Blancarte, Temporary Judge.
(Pursuant to Cal. Const., art. VI, § 21.)  Reversed.

Susan L. Ferguson for Defendant and Appellant.

Jennifer Curcio, in pro. per., for Plaintiff and Respondent.

Julia Pels appeals from a restraining order issued under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.)[1] at the request of her former girlfriend Jennifer Curcio. We agree with Pels that the trial court's finding she disturbed the peace is not supported by substantial evidence and the trial court improperly shifted the burden of proof of past abuse to her. We reverse.

### FACTS AND PROCEDURAL BACKGROUND

**1.** ***Curcio's petition***

Curcio and Pels used to date. Their relationship ended in early 2016. They both are comedic performers. On November 2, 2018, Curcio filed a Judicial Council form DV-100 request for a domestic violence restraining order against Pels. The form asks the applicant to describe the most recent abuse and any past abuse. Curcio stated the most recent abuse occurred October 16, 2018, and Pels had abused her from November 2015 through the present.[2] Curcio attached a declaration to describe the abuse: On October 16, 2018, "Pels reached out to people" at the theater where Curcio performed "in an attempt to have [Curcio] banned by falsely accusing [her] of physical [and] sexual assault." Curcio stated that when she was not banned from the theater, Pels "publicly posted on social media with [her] name [and] the accusations." Curcio declared "multiple friends" sent her "screen shots from [Pels's] social media accounts vaguely accusing [her] of abuse [and] urging people not to book [her] on comedy shows."

---

[1] Statutory references are to the Family Code unless otherwise noted.

[2] Curcio wrote "N/A" in the space to "[d]escribe any injuries" for the most recent abuse, and "[a] blow to the head" for the past abuse.

2

Curcio accused Pels of threatening, in December 2015, "to ruin [her] reputation with false accusations of abuse, if [she] ever crossed her." She also asserted that during their relationship in November 2015, she awoke to a "blow to [her] head" after falling asleep during an intimate encounter with Pels. Curcio stated that after they broke up in early 2016, Pels tried to get into comedy shows where Curcio was performing and "behaved aggressively" when she was not let in. When Pels "made an aggressive attempt to get into" one of Curcio's shows in March 2016, the host banned Pels from the show. Curcio also declared Pels waited outside the front door of her apartment in March 2016 and would not leave until Curcio had two friends come over.

Curcio described Pels as coming to one of her comedy shows in January 2018 and trying to get "physically close" to her, despite Curcio's "attempts to get away from her." She stated Pels "has also tried to be booked on the same shows as me [and] has occasionally heckled me." She said she wanted the restraining order because she "talked" to Pels's "ex." Curcio described her conversation with the woman. She attached a text message the woman sent to her as an exhibit to her petition. In it the woman described Pels as "unstable, dangerous, and [a] pathologically lying person." After describing the woman's account of her relationship with Pels, Curcio asserted, "This is the repeated pattern of explosive, volatile behavior that makes me feel scared of Julia Pels. Her obsession [and] fixation on me for the last 3 years since our breakup also makes me feel threatened [and] like this will escalate to physical abuse again."

Curcio attached several exhibits to her petition, including what she described as Pels's "public[ ] social media post, accusing me of physical/sexual assault [and] likening booking me on comedy shows to supporting a rapist." Because it is the primary

3

basis for the restraining order, we reproduce Pels's Facebook post as it originally appears in the record:

> "I HAVE WAITED THREE YEARS to say this. with all the talk of equality and 'believing women,' I thought it was time to share my story. as much as i've wanted to write this post, i've also dreaded it. like most abuse victims, we are afraid we won't be believed or we will be shamed for telling the truth. but i'm NOT a victim, i'm a survivor and i'm NOT afraid to tell the truth anymore.
>
> "JEN CURCIO (yes, i just outted my abuser) was SEVERELY AND DISTURBINGLY ABUSIVE TO ME in the six months we dated. she still abused ME EVEN AFTER i broke up with her. she gave me ptsd among other things.
>
> "NOW, i'm here to say this to all of the 'FEMINISTS' out there. if you are going to believe ALL WOMEN, that goes for QUEER women as well. men are not the only predators in this world, unfortunately. women, YES WOMEN, can be just as bad.
>
> "AND, FOR THE RECORD it's not a 'she said/ she said.' i have proof. wanna see the death threats from her friends, pictures of bruises or recordings of her verbally accosting me? i'm tired of keeping my mouth shut. she doesn't even deserve this post, but other women

deserve to be SAFE.  that's the ONLY reason why i'm telling this story.

"WHEN YOU BOOK HER ON YOUR SHOWS, BEFRIEND HER, PLAY ON IMPROV TEAMS WITH HER YOU, ARE ENABLING AN ABUSER.  IT IS LIKE SUPPORTING A RAPIST, would you book a male comic rapist or abuser of any sort?  LET US ALL STOP BEING HYPOCRITICAL AND BELIEVE ALL WOMEN, including me.

"AND TO ALL OF MY FRIENDS THAT HAVE AND DO BELIEVE AND SUPPORT ME, i love you infinitely.  TO THOSE that don't believe me, unfollow me now!

"p.s.  she has abused other women and even improv members so please be careful.  she is currently under investigation by multiple theatres."

Curcio also attached screen shots of messages from her friends commenting about Pels and a "cease and desist" letter she sent to Pels in October 2018 after the Facebook post.

Curcio checked the boxes on the form to request personal conduct orders, including that Pels be restrained from harassing or disturbing Curcio's peace, a stay-away order requiring Pels to stay 100 yards away from Curcio, and the right to record any communication that violated the court's orders.  Curcio also asked the court "to order [Pels] to stop posting about me on social media platforms."

*The hearing on Curcio's petition and restraining order*

The court held a hearing on whether to grant the restraining orders on November 26, 2018.  Both Curcio and Pels appeared at the hearing in pro. per. and were placed under oath. The court acknowledged it had a proof of service, and Curcio's requested restraining orders against Pels had been granted on November 2, 2018, "on a temporary basis" (TRO).[3]

The court explained to the parties, "My job today is to review the evidence from both sides for the first time because on the day that Ms. Curcio filed her petition, Ms. Pels was not present.  She did not know what she was being accused of, and she had not had an opportunity to contest or oppose the request for further restraining orders. [¶] Today is the day that Ms. Pels gets to exercise her constitutional right for a full and fair hearing."  The court "noted . . . the granting of the TRO created a presumption that some type of abuse has occurred.  It's a rebuttable presumption which means that Ms. Pels may overcome and dissolve the presumption through her evidence." The court explained Pels could cross-examine Curcio about the allegations, present her own witnesses if they had personal knowledge the alleged conduct did not happen, and testify herself under oath.  The evidence she presented could lead the court to find Curcio has not sustained her burden of proof.

The court then said Curcio had sustained her burden of proof "on a preliminary basis" as a result of the TRO.  It shifted the burden to Pels, stating she had "the burden of proving by a preponderance of the evidence that these allegations are not true."  The court asked Curcio if her statements in the petition were "true, accurate and correct."  After she answered, "[y]es,"

---

[3]     The TRO, notice of hearing, and proof of service of the TRO are not included in the appellate record.

the court accepted Curcio's written statements as her preliminary testimony, finding it supported the earlier granting of the TRO. The court then shifted the burden to Pels.

The court asked Pels if she had "any questions for Ms. Curcio about these allegations," and if she had any witnesses she would like to call. Pels said, "[n]o." The court then allowed Pels to testify on her own behalf.

Pels testified she made the October 16, 2018 social media post stating Curcio had abused her "on my private Facebook page that is on lockdown where no one except my friends can see it." Pels said she had proof of Curcio's verbal and psychological abuse of her, and also asserted Curcio had manhandled her. She told the court she had photographs and audio recordings. The court explained it could hear evidence of Curcio's abuse only if Pels had filed a petition against Curcio that was before the court.

After explaining she did not file her own petition because most of Curcio's behavior "was not physical," Pels seems to have attempted to address Curcio's allegation that Pels hit her in the head in late 2015. Pels told the court she had email messages and Facebook messages from Curcio expressing her love for Pels and wanting Pels "to come home for dinner" from the same time period when Curcio alleged Pels gave the blow to the head. Pels testified that since they broke up in 2016, "[t]here has been no contact from me."

She asserted, "Ms. Curcio has no evidentiary support of any of this. She did this as an act of malice and revenge because I told the truth of her verbal, psychological and mental abuse that I had to endure, your honor, for three years." Pels mentioned "someone else" told her Curcio had done the same thing to her.

The court responded that it had "listened carefully" to what Pels had said, "but at this point everything you told me even if

7

it were soaking wet true would not help me because it's not admissible evidence as a defense to the allegations that Ms. Curcio is making. [¶] . . . If you had a petition on file, I would hear both of you and in the wors[t] case scenario . . . I would grant mutual restraining orders, but I do not have that. [¶] So everything you told me cannot be a defense to a zero tolerance act of domestic violence."

The court then asked Curcio if she claimed Pels had been physically abusive and when the abuse happened. Curcio responded, "November 2015 . . . , I fell asleep, and I felt a blow to my head." The court then asked, "If that happened in 2015, why am I hearing about it now?" Curcio answered,

> "Because on November[4] the 16th Ms. Pels did post . . . I believe it was not public but we both are in comedy and I have had no contact with her, but she posted using my name accusing me of sexual and physical assault and mental and verbal assault, and those are not true allegations, and to a lot of people she specifically said when you book her [meaning Curcio] for shows, befriend her, play on improv[ ] teams with her, you are enabling an abuser. It's like supporting a rapist. [¶] . . . I have my job at CollegeHumor because of my comedy, and people at my work were questioning me about this post, and I had to go to my immediate supervisor and explain everything that has happened, and there's just always been kind of rumblings from her

---

[4] The record demonstrates the Facebook post was in October 2018.

8

about these false accusations of abuse,
and it's starting to hurt my career."

After hearing from Curcio, the court explained to Pels that "disturbing someone's peace to a degree that no reasonable person should have to endure," is a ground for issuing a restraining order. The court continued, "I can and will issue those restraining orders even if you never laid a hand on the petitioner, and what she just put on the record is that you have interfered with her ability or you have attempted to interfere with her ability to earn a living. That would disturb the peace of any reasonable person. If you came into my life telling people that I should not be on the bench for X reasons, it would disturb me greatly. You are disturbing my peace by interfering with my ability to earn a living. [¶] Why is it any different if you are posting on social media that no one should book her?"

The court reasoned, "Telling somebody don't book somebody is interfering with their work. . . . [¶] It's not something that the law tolerates. It's a form of abuse." Directing its comments toward Curcio, the court qualified that it was "not too worried about . . . 2[0]15. . . . If it happened, it's inappropriate, and if it happened, it's a violation of the domestic violence prevention act, but what happened in 2015 does not carry the same weight as if it happened last month or even last year. [¶] But now you add to that an allegation that she has gone into your life telling prospective employers not to book you. You have my attention. Is there anything else I need to know?" Curcio then described Pels's friend posting photos on Instagram after Pels was served, but the court found that was not evidence of domestic abuse by Pels.

Pels then asked the court how Curcio "can get a restraining order against me aside from the Facebook post with zero evidentiary support to support her other allegations." She said

9

she would take the Facebook post down, "if that means that I never have to see her again. I want nothing to do with Ms. Curcio. You don't have to restrain me. I don't even think of her."

The court responded, "The issue for me is that if you don't want to be in her life . . . [¶] then don't post anything anywhere, at anytime about her. I'm going to issue a restraining order that orders you to do that because that is inappropriate and harmful."

The court ordered, "For two years only you are ordered to not harass Ms. Curcio. You may not strike or hit her. Even though it's remote in time, it's not going to happen in the future. You may not assault her sexually or otherwise. You may not molest her or disturb her peace in any way, shape or form. [¶] You may not disturb her peace by posting anything on any social media that includes her name, face and likeness. You are expressly ordered to not post anything on the internet or any social media that would suggest to prospective employers that they should not hire her or book her in any way. [¶] You are ordered to not contact her directly, indirectly, in any way including but not limited to by telephone, mail, email, text message, Facebook, Instagram, social media or other electronic means."

The court ordered Curcio to stay 100 yards away from Pels, except in comedy clubs. It ordered Pels to stay five yards from Curcio in comedy clubs and not interrupt Curcio's set or talk to her while at the club. The court incorporated the orders it read into the record by reference "as though set forth in full" in the written restraining order.

After an exchange with Pels, described in more detail below, the court concluded she had not "accept[ed] responsibility for the evidence" concerning the Facebook post and extended the restraining order an additional year.

10

The court then entered the Judicial Council form DV-130 restraining order after hearing in favor of Curcio against Pels with a November 26, 2021 expiration date. In addition to the form personal conduct and stay-away orders, the order states Pels "is to remove [Curcio's] name and image from any and all social media and post nothing to social media of or about [Curcio]."

## 2. *Pels's motion for reconsideration*

After the hearing, Pels retained counsel who filed a motion for reconsideration on her behalf on December 5, 2018. Pels, through her attorney, argued she was not provided the required forms DV-120 and DV-120 Information when she was served with the restraining order hearing documents, which provide instruction on how to file a response. Counsel argued that because Pels was not served with the required forms, "she did not know how to prepare for the . . . hearing" and did not bring any witnesses. She requested the court reconsider its order and "allow Ms. Pels an opportunity to present her case properly with the assistance of counsel." Pels's counsel represented Pels would "put forth witness(es), declarations, and other testimony properly challenging and responding to the unfounded accusations made by Ms. Curcio," providing new facts not available at the November 2018 hearing.

Counsel also argued the court had improperly shifted the burden of proof to Pels. She contended the court "could have provided Ms. Pels with an opportunity to continue the hearing" when Pels told the court she would have brought witnesses if she had known she needed to do so.[5]

---

[5] During the November 2018 hearing, after the court issued the restraining order, Pels told the court, "I moved, your honor, and I was unaware of any of this. I would have brought

11

Finally, counsel argued new circumstances existed in that since the entry of the restraining order on November 26, 2018, Pels had been banned from a comedy venue where she had worked. Pels submitted a declaration in support of the motion for reconsideration. She declared she "never abused [Curcio] physically, psychologically, sexually or in any manner during [their] relationship back in 2015 until now." She stated she was not served with documents about how to respond to the restraining order, she did not know she had the burden of proof until the court told her she did at the November 2018 hearing, she would have brought witnesses and evidence to the hearing had she known, and she was unaware she could request a continuance to prepare for the hearing or hire an attorney. Pels also declared she has been banned from the venue where she performed her comedy show, which "interferes with my livelihood." Pels's agent submitted a declaration averring "[u]pon information and belief, if this domestic violence restraining order is not lifted, it will be very difficult for me to book Ms. Pels for any paid jobs in major film and television."

The court heard Pels's motion for reconsideration on January 4, 2019. It heard testimony from Pels concerning the new facts she contended supported her motion for reconsideration, including allegations of Curcio's abuse. In response to questions by her attorney, Pels denied hitting Curcio in the head. She again testified she had not had any contact with Curcio since 2016. She also confirmed she made one post on her private Facebook page about Curcio's abuse on October 16, 2018. "Nowhere public." Pels said she made the October 2018 Facebook post "[b]ecause over five women came forward telling me Ms.

witnesses today. I would have brought witnesses. There's been no contact . . . . She has no proof of any contact, Your Honor."

12

Curcio had done the same thing to . . .[¶] . . .them." She agreed she "felt the need to speak out even though [she] had not contacted [Curcio] or talked to her for that long."

The court explained Pels had the right to file her own petition, but "it does not prove that I was wrong in issuing my restraining order." The court concluded the new facts Pels presented were "in support of a petition not before" it. It concluded no new facts supported reconsideration of its issuance of the restraining order and denied the motion.

## DISCUSSION

Pels challenges the restraining order on a number of grounds. She contends the court improperly shifted the burden of proof to her, her private Facebook post does not constitute disturbing the peace under the DVPA, the order constitutes a prior restraint on Pels's speech, and the court abused its discretion when it extended the expiration date of the order from two to three years.

### 1. *Applicable law and standard of review*

Under the DVPA, a court is authorized to issue a protective order " 'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' " upon "reasonable proof of a past act or acts of abuse." (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 225, 228 (*Davila & Mejia*); *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782; accord, §§ 6220, 6300.) Abuse includes "intentionally or recklessly caus[ing] or attempt[ing] to cause bodily injury"; "[s]exual assault"; "plac[ing] a person in reasonable apprehension of imminent serious bodily injury to that person or to another"; and "engag[ing] in any behavior that has been or could be enjoined" under section 6320. (§ 6203, subd. (a).) Behavior that may be enjoined under section 6320 relevant to this appeal includes "disturbing the peace of

13

the other party" (§ 6320, subd. (a)), which "may be properly understood as conduct that destroys [another's] mental or emotional calm." (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1496-1497 (*Nadkarni*).) "Thus, section 6320 provides that 'the requisite abuse need not be actual infliction of physical injury or assault.' " (*Id.* at p. 1496.)

The DVPA vests the court with discretion to issue a restraining order "simply on the basis of an affidavit showing past abuse." (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334, 337-338 [reversing summary denial of TRO].) The burden of proof is by a preponderance of the evidence. (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 90, fn. 14; *Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137.) The DVPA "confer[s] a discretion designed to be exercised liberally, at least more liberally than a trial court's discretion to restrain civil harassment generally." (*Nakamura*, at p. 334.)

We review the grant of a DVPA restraining order for abuse of discretion, and, to the extent we are called upon to review the court's factual findings, we apply the substantial evidence standard of review. (*Davila & Mejia, supra*, 29 Cal.App.5th at p. 226.) In reviewing the evidence, we examine the entire record to determine whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court's findings. (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143 (*Burquet*).) We must accept as true all evidence supporting the trial court's findings, resolving every conflict in favor of the judgment. (*Ibid*.) We do not determine credibility or reweigh the evidence. (*Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th 104, 107.) If substantial evidence supports the judgment, reversal is not warranted even if facts exist that would support a contrary finding. (*Ibid*.)

14

## 2. *The private Facebook post was insufficient to support the issuance of a domestic violence restraining order*

The trial court made clear it was issuing the restraining order on the ground Pels had disturbed Curcio's peace through the October 2018 Facebook post. We thus first consider whether the post is sufficient evidence of abuse. As the court told Pels, the DVPA does not require Pels to have "laid a hand on" Curcio for a restraining order to issue. Pels could be enjoined under the DVPA for disturbing Curcio's peace through conduct causing "destruction of her mental or emotional calm." (*Nadkarni, supra,* 173 Cal.App.4th at pp. 1497, 1499.)

Courts of Appeal have found conduct involving communications such as text messages, email, and social media constitutes abuse under the DVPA for disturbing the petitioner's peace. In defining "disturbing the peace" under the DVPA as "conduct that destroys [another's] mental or emotional calm," the Sixth District Court of Appeal in *Nadkarni* concluded the petitioner's application for a restraining order was facially sufficient where she alleged her ex-husband accessed, read, and publicly disclosed the content of her confidential emails, which caused her to suffer embarrassment and "to fear for her safety." (*Nadkarni, supra,* 173 Cal.App.4th at pp. 1497-1499 [reversing dismissal of application for restraining order].) The court concluded the ex-husband's conduct with respect to the e-mail account allegedly caused the "destruction of [petitioner's] mental or emotional calm and could, if found to be true, constitute 'disturbing the peace of' " the ex-wife "sufficient for a showing of abuse under the DVPA." (*Id.* at pp. 1498-1499.)

Similarly, in *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1419, the First District Court of Appeal affirmed the trial court's finding of abuse and issuance of a restraining order under the DVPA where a husband downloaded

15

"tens of thousands of text messages" from his wife's cell phones and information from the " 'notes' section of [her] iPhone, which [she] used as a diary," and filed copies of some of the downloaded messages with the court during the couple's dissolution proceedings. (*Id.* at p. 1420.) The wife alleged the husband also transmitted private text communications to third parties, had "hacked into her Facebook account, changed her password, and rerouted the e-mail associated with her Facebook account to his own account," and "threatened to reveal publicly more text messages and e-mails for leverage in the dissolution proceedings." (*Id.* at p. 1421.) And, this District concluded substantial evidence supported the trial court's finding a defendant "disturbed the peace of plaintiff" through a "course of conduct of contacting plaintiff by phone, e-mail, and text, . . . and arriving at her residence unannounced and uninvited, and then refusing to leave." (*Burquet, supra,* 223 Cal.App.4th at pp. 1142-1144, 1146-1147.)

Pels's single, *private* Facebook post accusing Curcio of abusing her is a far cry from the conduct described above. Pels expressed political views and posted her opinion of Curcio to her own *private* social media account. Curcio herself told the court she believed the post "was not public." Curcio also presented no evidence Pels *sent her* harassing, threatening, or unwanted texts or e-mails, as in *Burquet*, or social media posts, for example. Indeed, Curcio told the court she had not been in contact with Pels. Nor is there evidence Pels published or distributed to third parties Curcio's private information or messages, as was the case in both *Nadkarni* and *In re Marriage of Evilsizor & Sweeney*. Curcio certainly never claimed the Facebook post included her confidential information.

We do not interpret *Nadkarni* and its progeny to hold a restraining order may issue based on any act that upsets

16

the petitioning party. The DVPA was not enacted to address all disputes between former couples, or to create an alternative forum for resolution of every dispute between such individuals. If Pels's Facebook post is libelous, for example, Curcio may seek recourse through a defamation suit.

Curcio understandably was upset by the social media post and it may have made her fear for her career, but we conclude it cannot be said to rise to the level of destruction of Curcio's mental and emotional calm, sufficient to support the issuance of a domestic violence restraining order.[6] Because we find the Facebook post does not constitute abuse under the DVPA we need not address Pels's contention the order is a prior restraint on her speech.

3. ***The remaining allegations do not support issuance of the restraining order because the court improperly shifted the burden of proof to Pels***

Besides the Facebook post, the other allegation the court discussed[7] when issuing the restraining order was Pels's alleged

---

[6] We note a domestic violence restraining order is no ordinary injunction. Its violation is punishable as a misdemeanor. (Pen. Code, §§ 166, subd. (c)(3)(A); 273.6.) Arrest is mandatory where an officer has probable cause to believe the order has been violated. (Pen. Code, § 836, subd. (c)(1).) Moreover, "[t]here often will be some social stigma attached while a person is subject to a protective order. Existing employers may frown on an employee who is subject to such an order and prospective employers almost surely will. Thus[,] the restrained party may lose out on a promotion or a job." (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1291.)

[7] To the extent the court considered Curcio's other allegations—for example that Pels came to one of her comedy shows—they too cannot support the restraining order because

17

"blow" to Curcio's head in 2015. The only definition of abuse under the DVPA to which the blow to the head falls is "[t]o intentionally or recklessly cause or attempt to cause bodily injury." (§ 6203, subd. (a)(1).) The court never found Curcio proved by a preponderance of the evidence that Pels hit her intentionally or recklessly, however. The court merely found Curcio's written statements supported the granting of the TRO; they raised "a presumption that something happened."

Instead, the court shifted the burden to Pels to prove "by a preponderance of the evidence that [Curcio's] allegations are not true." But the law imposes no such burden on a party opposing a restraining order. As the party seeking the restraining order, Curcio was required to prove past abuse by a preponderance of the evidence. (*Davila & Mejia, supra*, 29 Cal.App.5th at p. 226 ["The DVPA requires a showing of past abuse by a preponderance of the evidence."].) In her written statement Curcio said she "was awakened by a blow to [her] head" and when she asked Pels "why she did this[,] [Pels] laughed." Pels seems to have attempted to prove Curcio's statement false—as the court told her she was required to do—by telling the court she had evidence Curcio told her she loved her and wanted her to come home during that same time.[8] She also argued Curcio had "no evidentiary support."

The court's comments on the record about the 2015 incident make clear the court did not find Curcio proved by a

---

the court presumed them to be true and shifted the burden to Pels to prove them false.

[8]    Pels denied the accusation at the subsequent hearing on her motion for reconsideration and in her declaration filed in support of that motion.

preponderance of the evidence that (1) the blow to the head occurred, or (2) Pels intentionally or recklessly caused or attempted to cause Curcio bodily injury with the alleged blow to the head. The court said, "*If* it happened, it's not right. *If* it happened, it's inappropriate, and *if* it happened, it's a violation of the [DVPA]." (Italics added.) Moreover, the court acknowledged it wasn't "too worried" about the alleged incident, and found "what happened in 2015 does not carry the same weight" as if it happened more recently. The court made clear it was the Facebook post "telling prospective employers not to book [Curcio]" that it found warranted the restraining order. That is what got the court's "attention."

Because the record does not demonstrate Curcio proved by a preponderance of the evidence an act of past abuse, and the court improperly shifted the burden to Pels to prove Curcio's allegations false, we reverse.[9]

---

[9] We note that during an exchange with Pels's counsel at the hearing on Pels's motion for reconsideration, the court noted the restraining order "was granted in part because there was an allegation that [Pels] caused a blow to the head of Ms. Curcio," and that while it could give "less weight the further remote in time that the evidence is. [¶] A blow to the head in 2016 [*sic*] is not so remote that I would not consider it." Responding to Pels's counsel's comment, the court also mentioned a police report was not required "in order to believe [Curcio's] testimony under oath" about the incident.

Toward the end of the reconsideration hearing, the court also stated it found Curcio "sustained her burden of proof by a 51 percent or more margin." The court made the comment after it had rejected Pels's counsel's argument that the burden shifted to Pels, and after she argued the court's stated main reason for granting the restraining order—Pels's private Facebook post— was insufficient to constitute disturbing the peace. It is unclear, therefore, whether the court was referring to Curcio meeting her

19

**4.** ***The court abused its discretion when it extended the restraining order for an additional year***

In the event of further proceedings in this matter, we address Pels's contention the court abused its discretion when it extended the expiration date of the restraining order from November 2020 to November 2021. After the court read the terms of the restraining order, Pels responded, "I have never been arrested or been a violent person. This is a manipulation of the court. I'm disappointed, but I respect you and I will respect your orders. Thank you." The court engaged Pels, ultimately asking her, "Did you post that people should not book her? Yes or no?" The following colloquy/dialogue ensued:

> Pels: "No, it says when you book her. It does not say do not book her, and also I have evidence in my phone, and if I knew I needed witnesses today, there would [be] 120 people here saying the same thing. [¶] I moved, your honor, and I was unaware of any of this. I would have brought witnesses. There's been no contact, no police reports, no restraining orders. She has no proof of any contact, your honor. I do not need to be restrained. If I'm in a comedy club, she could call the police, and I could be arrested for just being at my space and performing. [¶] Ms. Curcio does not get paid to perform, your honor. So I'm not

---

burden of proof on the disturbing the peace allegation or the blow to the head. In any event, the court's earlier statements we have described, combined with its shifting of the burden of proof to Pels, demonstrate the court had not found the blow to the head allegation true by a preponderance of the evidence at the time it issued the restraining order.

20

interrupting her job. She has a day job. And it's very upsetting when people with mental illnesses abuse the court system. [¶] I appreciate your time today."

Court: "You are running through rain drops, young lady. You want me to feel good about saying that you have nothing against me except allowing myself to be manipulated. I do not allow myself to be manipulated. When on the record you talk about people not booking her and not employing her, I asked you if that were true to see if you were willing to accept responsibility. Accepting responsibility in these conduct cases carries a lot of weight. You have done the exact opposite. [¶] Your order is now for three years for not accepting responsibility for the evidence that I have before me."

The record does not support the court's finding. Pels admitted she had made the Facebook post. Her response to the court that she did not "post that people should not book her," but posted, "when you book her," is factually accurate. She also told the court, "I respect your order." The court articulated no legal basis to add another year to the restraining order and abused its discretion by doing so.

## DISPOSITION

The November 26, 2018 order restraining Julia Pels
is reversed.  The parties are to bear their own costs on appeal.


EGERTON, J.

We concur:



LAVIN, Acting P.J.



DHANIDINA, J.

Filed 3/27/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JENNIFER CURCIO, | B295293 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 18STRO07928 |
| v. | |
| JULIA PELS, | ORDER CERTIFYING FOR PUBLICATION [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter, filed on February 27, 2020, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports.

There is no change in the judgment.

_____

EGERTON, J.             LAVIN, Acting P. J.             DHANIDINA, J.