Filed 4/5/24

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| BR.C., | C097015 |
| Plaintiff and Respondent, | (Super. Ct. No. S-DR-0061942) |
| v. | |
| BE.C., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Placer County, Frances A. Kearney, Judge. (Retired judge of the Placer Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Be. C., in pro per, for Defendant and Appellant.

Herrig, Vogt, & Hensley, Trevor L. Hensley for Plaintiff and Respondent.

1

Appellant Be. C. appeals in propria persona the trial court's grant of a domestic violence restraining order (DVRO), which protects respondent Br. C., their two children, and their two dogs from Be. C. for a three-year period. The crux of Be. C.'s argument is that the trial court erred by admitting three recordings into evidence and that substantial evidence does not support the DVRO. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Be. C. and Br. C. were married and had three-year-old twins, T.C. and L.C., during the following course of events. On March 16, 2022, Be. C. screamed at Br. C. for cooking their children dinner, lunged at her, and told her to "Get the fuck out of the kitchen or else." He threw hot soup into the sink, which splashed onto L.C., and he threw a bag of cheese at Br. C. Be. C. continued to yell and look for more things to grab, so Br. C. called 911 and obtained an emergency protective order against Be. C.

In August 2022, the court held a trial on Br. C.'s request for a DVRO against Be. C. Along with evidence of the March 16 incident, the trial court also heard evidence that Be. C. would slam cabinets, and plates, throw water bottles at walls, and yell at Br. C. during the twins' bedtime. This occurred every night for approximately one year. Be. C. called Br. C. derogatory names on a daily basis, such as "fat psycho bitch," "stupid," and "lazy," and said that she wanted to and deserved to "be treated like shit." The twins would hear the fights and often beg their dad to stop yelling.

The trial court also heard two recordings from February 12, 2022. In the first one, Be. C. yelled at Br. C. in front of their children. He called her a "fucking moron," and "[f]ucking bitch," and told her to "get the fuck out [of] here. Cause I'm better off without you anyway." The second recording was taken while Be. C. was driving Br. C. in a car. Be. C. began to argue with Br. C., and she asked him numerous times to please pull over and let her out of the car. Be. C. refused, instead continually cursing, and berating her for taking four hours to get ready to leave. Br. C. apologized repeatedly.

2

In a third audio recording, Be. C. cursed at and criticized Br. C. in several lengthy rants. Among other things, he demanded she never rush him or "treat [him] like shit," and called her "fucking evil" and "fucking mean."

After hearing eight witnesses and considering numerous exhibits, the trial court granted the DVRO. While it acknowledged that evidence of physical abuse was not substantial, it found that the evidence demonstrated conduct that destroyed the mental or emotional calm of Br. C., and placed her in apprehension of serious bodily injury. The order requires Be. C. to stay away from Br. C., their children, and their dogs, for a three-year period, except for court-ordered visitation with the children.

## DISCUSSION

We initially address the deficiencies in Be. C.'s briefing. An appellant's brief must "[p]rovide a summary of the significant facts limited to matters in the record" (Cal. Rules of Court, rule 8.204(a)(2)(C)), state each point under a separate heading and support each point by argument and, if possible, by citation of authority, (Cal. Rules of Court, rule 8.204(a)(1)(B)), and support each reference to a matter in the record by citation (Cal. Rules of Court, rule 8.204(a)(1)(C)). Here, Be. C.'s briefs fail to comply with these rules of appellate procedure, as they contain many unsubstantiated factual assertions—many of which appear to be outside the record—and threads of various disconnected arguments. It is Be. C.'s burden to affirmatively demonstrate error by citing applicable law and showing where in the record the error occurred. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citation.]" (*Id.* at p. 852, fn. omitted.) Accordingly, while we consider Be. C.'s arguments that are supported by relevant

3

authority, we do not (and cannot) consider stray arguments, facts outside the record, or unsupported assertions.[1]  We therefore turn to Be. C.'s fully articulated arguments.

I

*Admissibility of Recordings*

First, Be. C. challenges the admission of the three audio recordings.  The trial court initially granted Be. C.'s motion to exclude the recordings on the ground that Be. C. did not know he was being recorded at the time, citing Family Code section 2022 and Penal Code section 630 et seq.[2]  Thereafter, Br. C. filed a brief requesting reconsideration, which cited statutes that permit admission of relevant, nonconsensual recordings evidencing abuse when an individual is charged with domestic violence (§ 633.5), and when a domestic violence victim is seeking a DVRO.  (§ 633.6.)  Be. C. opposed the motion.  The trial court found section 633.6, subdivision (b) applicable and, upon reconsideration, denied the motion in limine.  During the trial, Br. C. presented the recordings and moved to enter them into evidence.  At that time, the court asked Be. C.'s counsel if he had any objection to their admission, and counsel responded, "No."

Br. C. first contends that Be. C. failed to adequately preserve the objection for appeal because his counsel did not object when the trial court admitted the exhibits into evidence.  Although Be. C.'s counsel injected uncertainty into the record by declining to object at that time, we nonetheless find that Be. C.'s motion in limine sufficiently preserved the issue for appeal.  A motion in limine preserves an objection where "(1) a specific legal ground for exclusion was advanced through an in limine motion and

---

[1]    As alternative relief, Be. C. seeks modifications to the DVRO, such as removing the children and dogs from the order and shortening its duration.  Be. C. provides no authority for this request, and has failed to meet his burden to show that such a request is supported by the law or the evidentiary record.

[2]    Undesignated section references are to the Penal Code.

subsequently raised on appeal; (2) the in limine motion was directed to a particular, identifiable body of evidence; and (3) the in limine motion was made at a time, either before or during trial, when the trial judge could determine the evidentiary question in its appropriate context. [Citations.]" (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 210-211.) Before trial, Be. C. filed a motion to exclude the recordings as impermissible on the same grounds he now asserts on appeal, and he obtained an express ruling from the trial court denying the motion. Thus, we may properly consider his challenge to the ruling.

Family Code section 2022, subdivision (a) states that "[e]vidence collected by eavesdropping in violation of Chapter 1.5 (commencing with Section 630 . . . of the Penal Code) is inadmissible." Under section 632, the intentional electronic recording of a confidential communication without the consent or knowledge of all parties is illegal, and the recording is inadmissible—with certain exceptions—in a judicial proceeding. (§ 632, subds. (a) and (d).) One such exception is set forth in section 633.6, subdivision (b), which provides that "[n]otwithstanding the provisions of this chapter . . . a victim of domestic violence who is seeking a domestic violence restraining order from a court, and who reasonably believes that a confidential communication made to him or her by the perpetrator may contain evidence germane to that restraining order, may record that communication for the exclusive purpose and use of providing that evidence to the court." (§ 633.6, subd. (b).) We review the admissibility of evidence for an abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 717.)

Here, as we discuss in greater detail below, the trial court did not err in finding section 633.6, subdivision (b) applicable and admitting the recordings. It was reasonable for Br. C. to believe that audio recordings of Be. C. yelling, cursing at her, berating her, and refusing to let her out of the car despite her pleas, may be relevant to her future request for a DVRO under section 633.6, subdivision (b).

5

Be. C. argues that the recordings do not come within the ambit of section 633.6, subdivision (b) because Br. C. made the recordings before filing a DVRO request. To accept Be. C.'s argument, we must read the statute narrowly, to permit recordings of relevant evidence only when a domestic violence victim already has a restraining order request on file with the court. Whether this interpretation of the statute is correct turns on the meaning of section 633.6, subdivision (b), which provides in relevant part that an applicant "who is *seeking a domestic violence restraining order* from a court" may record confidential communications that "may contain evidence germane to that restraining order." (§ 633.6, subd. (b), italics added.) We do not read this language to impose a requirement that a DVRO application be filed before recording evidence of domestic violence.

"Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them 'their usual and ordinary meaning.' [Citation.] 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.] 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387-388.)

First, although the statutory text could be read to require an active DVRO request before otherwise confidential communications are recorded, the statutory language does not explicitly require that a victim must petition for a DVRO before recording evidence of domestic abuse. While the Legislature could have drafted the statute with this express procedural precondition, it did not do so. Instead, it used the phrase "is seeking a [DVRO] from a court" when recording the communication. The use of more general language—"is seeking"—suggests a broader construction under which the victim is attempting to obtain evidence in support of a future DVRO. Thus, the primary inquiry

6

required by the statute is not whether the individual has formally requested relief from the court at the time of the recording, but rather the intention of the individual at the time of the recording. Specifically, the statute requires the victim to make the recording for the "exclusive purpose and use of providing [relevant]" evidence in support of a restraining order, and with the reasonable belief that the recording is relevant. (§ 633.6, subd. (b).) We read the statute to allow a victim to record confidential communications, so long as he or she intends to request a DVRO and reasonably believes that the communication may contain evidence germane to that request, regardless of whether a petition has yet been filed with a court.

Further, to the extent the phrase "is seeking" is ambiguous, the legislative history supports our reading of the statute. The Legislature added subdivision (b) to section 633.6 in 2017 to "allow[] a party to a confidential communication to record the conversation for the purpose of obtaining information reasonably believed to relate to the crime of domestic violence." (Stats. 2017, ch. 191, § 2; Assem. Floor Analysis of Assem. Bill No. 413 (2017-2018 Reg. Sess.).) The comments explained that, before the bill's enactment, California was " 'one of only 11 states that does not allow a domestic violence survivor to use recorded evidence of her abuse in a courtroom unless the abuser gives consent to being recorded.' " (Assem. Floor Analysis of Assem. Bill No. 413 (2017-2018 Reg. Sess.), as amended Jul. 11, 2017, p. 3 [quoting the bill's author's comments].) Consequently, a survivor who tried to admit recordings of domestic violence could " 'be sued in civil court by the abusive party and charged criminally by the state,' " and thus would be " 'in danger of not receiving the help they need from our court system.' " (*Ibid.*) Without the enactment of section 633.6, subdivision (b), " 'the argument in court becomes a 'he-said, she-said,' leaving out recordings that are the most reliable types of evidence.' " (Assem. Floor Analysis of Assem. Bill No. 413, *supra*, p. 3.)

7

Thus, the statute was drafted (1) to aid domestic violence victims, by permitting them to submit relevant evidence in support of a restraining order without fear of legal retribution, and (2) to aid courts in making credibility determinations in difficult he-said, she-said scenarios, where direct evidence is often scarce. Nothing in the legislative history indicates that a DVRO petition must be filed before recordings are made. Indeed, it is difficult to see how this statute would achieve its purpose if we construed it to impose a prefiling requirement. If we did, a domestic violence victim would have to request a DVRO based on abuse that he or she was not permitted to record. Then, between the filing date and the hearing date, the victim could record any additional evidence of abuse that happened to occur, even though it did not form the basis for the DVRO request in the first instance. Such an interpretation would greatly diminish the efficacy of the statute. Similarly, one can easily imagine a circumstance in which a victim decides, during a moment of abuse, to record the event in anticipation of seeking a restraining order thereafter. The statutory language and legislative history signal that the statute is meant to encompass such a scenario, both to protect the victim and provide useful evidence to the court.

Turning then to this case, there is no dispute here that Br. C. made the recordings before filing her DVRO petition. And, as we have discussed, the recordings were clearly germane to the question of the existence of, and extent of, Be. C.'s abuse. Thus, the applicability of section 633.6, subdivision (b) hinges on whether Br. C. made the recordings for the purpose of providing evidence to the court in support of a DVRO request.

The record on this question is fairly sparse. However, at the motion in limine hearing, Br. C. states under oath that she made the recordings "because of the domestic violence and [*sic*] not used to what was happening, and for the protection of myself and the children." She testified that she told Be. C. when she was recording, and that "he needs to stop" his abusive behavior or she was "going to need to report." This testimony

8

is sufficient to uphold the trial court's finding that Br. C. made the recordings to use as evidence in support of her anticipated DVRO. Indeed, she expressly states the recordings were made for the protection of herself and the children for when she needed to report, i.e., seek protection from Be. C. through the justice system. Moreover, two of the recordings were made approximately three weeks before Br. C. obtained a temporary restraining order (TRO), and the third recording, though not time-stamped, appears to be from the same general timeframe. This short time period between the recordings and application for a TRO further supports Br. C.'s representation that she made the recordings for the purpose of collecting evidence to help obtain a protective order. Finally, Br. C.'s DVRO application states that Be. C. emotionally abused her daily by calling her names such as "stupid," "fat," "lazy," and "bitch." This type of verbal abuse, including some of these exact terms, is heard on the recordings. Accordingly, the recordings did in part form the evidentiary basis for Br. C.'s DVRO application, further suggesting that she recorded them to help her get an order of protection from the court. Based on the foregoing, the trial court did not abuse its discretion by admitting and considering the evidence pursuant to the statutory exception.[3]

## II

### *Sufficiency of the Evidence*

Next, Be. C. contends that the trial court did not afford sufficient weight to his testimony and exhibits, appearing to generally argue that the evidence does not support the grant of the DVRO. We conclude that substantial evidence of domestic violence supports the trial court's ruling.

---

[3] We note that Be. C. seems to concede later in his brief that Br. C. did make the recordings with the intent to use them as evidence in this proceedings, asserting: "She filmed these videos to not only support an anticipated DVRO filing, but to gain more evidence to push me out of our children's lives and replace me with another man."

9

Pursuant to the Domestic Violence Prevention Act (DVPA), (Fam. Code, § 6200 et seq.), a court may issue a protective order " 'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' upon 'reasonable proof of a past act or acts of abuse.' " (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782, quoting § 6300.)  The DVPA defines domestic violence, as relevant here, as abuse perpetrated against a spouse, cohabitant, or the child of a party.  (§ 6211, subds. (a), (b), & (e).)  "Abuse" includes:  "(1) To intentionally or recklessly cause or attempt to cause bodily injury[;] . . . (3) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another[; or] (4) To engage in any behavior that has been or could be enjoined pursuant to Section 6320."  (§ 6203.)  The behaviors outlined in section 6320 include "attacking, . . . threatening, . . . harassing, . . . destroying personal property. . . [or] disturbing the peace of another party" by "destroy[ing] the mental or emotional calm of another party." (§ 6320, subds. (a)(c).)  The DVPA requires a showing of past abuse by a preponderance of the evidence.  (*In re Marriage of Davila and Mejia* (2018) 29 Cal.App.5th 220, 226.)

"We review an order granting or denying a DVRO for abuse of discretion. [Citation.]  In reviewing the trial court's factual findings, we apply the substantial evidence rule.  [Citation.]  The inquiry is whether substantial evidence supports the court's finding, not whether a contrary finding might have been made.  [Citation.]  We accept as true all evidence tending to establish the correctness of the trial court's findings and resolve every conflict in favor of the judgment.  [Citation.]"  (*M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1143-1144.)

Here, the trial court heard substantial evidence of Be. C.'s abuse against Br. C., often in their children's presence.  Be. C. threatened and harassed Br. C., at times placing Br. C. in apprehension of imminent serious bodily harm.  Br. C. testified that on numerous occasions, Be. C. would yell and curse at her and call her names.  He would also slam and throw objects on a daily basis during the children's bedtime.  On one

occasion, he threw a bag of cheese at Br. C. and threw hot soup, splashing his daughter. The recordings revealed several instances in which Be. C. lost his temper at Br. C., insulted her, angrily ranted, and in one instance, refused to let her out of the vehicle despite numerous pleas. To the extent Be. C. argues the trial court should have believed his version of events over Br. C.'s version, we cannot make such a finding. On appeal, we resolve all factual conflicts and questions of credibility in favor of the prevailing party. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) Thus, we cannot substitute our own credibility determinations and factual findings for that of the trial court.

Based on the foregoing, the DVRO is affirmed.

## DISPOSITION

The order is affirmed.  Br. C. shall recover her costs on appeal.  (Cal. Rules of
Court, rule 8.278(a)(1), (2).)


_____\\s\\_____,
Krause. J.


We concur:


_____\\s\\_____,
Earl, P. J.


_____\\s\\_____,
Keithley, J.*

---

\*     Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant
to article VI, section 6 of the California Constitution.