Filed 10/23/18; Modified and Certified for publication 11/19/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of ANNASTASIA ERINE DAVILA and JESUS MIGUEL DAVILA MEJIA. | B279874 |
| | (Los Angeles County Super. Ct. No. LQ020780) |
| ANNASTASIA ERINE DAVILA, Respondent, v. JESUS MIGUEL DAVILA MEJIA, Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Alicia Y. Blanco, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

Lieber & Galperin, Yury Galperin and Collin Grant for Appellant.

No appearance for Respondent.

# INTRODUCTION

Jesus Miguel Davila Mejia appeals from a domestic violence restraining order (DVRO) issued in favor of his wife, Annastasia Erine Davila. Mejia contends the trial court abused its discretion in issuing the DVRO because it was based on allegations not contained in Davila's request for a DVRO, and he was prevented from introducing evidence to impeach Davila. He also contends there is no substantial evidence to support issuance of the DVRO. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Davila's Request and Issuance of a Temporary DVRO*

Mejia and Davila are married and previously lived together. Davila filed a petition for dissolution of their marriage in July 2016.[1] Mejia helped raise Davila's three children, who at the time of Davila's request were 12, 14, and 17.

On November 4, 2016 Davila filed a request for a DVRO,[2] in which she alleged as the basis for her request that Mejia had a history of verbally and emotionally abusing the children and that "[i]n the past [Mejia] has been physically abusive towards [her son] when I am not present. . . . *[Mejia] has threaten[ed] to physically harm me.* I fear for the safety of my children because [Mejia] has threaten[ed] to take the children to Mexico." (Italics added.) In her

---

[1]    The record does not reflect whether Mejia and Davila are presently married.

[2]    We augment the record on our own motion to include Davila's request for a DVRO filed on November 4, 2016. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

supporting declaration, Davila stated that on the evening of November 2, Mejia "jumped over the gate and tried to enter the house to remove the children and take the children with him." Mejia threatened physically to abuse the children if they did not open the door. Her daughter called the police because she was afraid. The police officers told Mejia to leave.

Davila added that Mejia had been "physically, emotionally and verbally abusive" to her children, including calling Davila's daughter a "slut," "[r]etarded," "[f]at," "[l]azy," "[s]mell[y]," and "[s]tinky." Mejia also repeatedly made phone calls to Davila's daughter without Davila's permission.

Davila stated that Mejia had been verbally abusive towards her in the past, calling her "[b]itch" and "[s]tupid [b]itch" approximately three to four times per day. Davila concluded, "I ask the court to grant me these orders because I fear for my safety and the safety of my children."

Davila did not give notice of her request for a DVRO to Mejia because she was afraid Mejia would hurt the children or take them away before a temporary restraining order could be issued. The trial court issued a temporary DVRO, ordering Mejia to stay away from Davila and the three children and to dispose of any firearms or ammunition in his possession. The trial court set a hearing on a permanent DVRO for November 28, 2016.

B. *Mejia's Response*

Mejia filed his response on November 10, opposing Davila's request for a DVRO. On the evening of November 2, Mejia went to Davila's house when he realized she was "overseas on vacation with her lover," and Mejia was concerned the children had been left alone. He knocked on the door for approximately five minutes without receiving a response. When Mejia saw a light was on in the

3

living room, he went through the backyard and knocked on the window.  One of the children saw him and ran away.  Mejia went around the other side of the house and knocked on another window.  Mejia left when he realized the children did not want to talk to him.  Mejia denied trying to abduct the children or threatening to do so.  He also denied repeatedly calling the older daughter or verbally or physically abusing Davila or the children.

C.     *The Hearing and Issuance of the DVRO*

Mejia and Davila were the only witnesses at the hearing.  Davila testified that the children did not want to be around Mejia because he was emotionally abusive towards them and physically abusive towards Davila's son.  Davila recounted the November 2, 2016 incident in which her daughter called the police because Mejia jumped over the gate and banged on the family's doors and windows.

At this point the trial court interjected to inquire about domestic violence perpetrated against Davila.  Davila responded that Mejia had taken up shooting as a hobby about two years earlier and she bought him a handgun as a gift.  Mejia "would come to me and hold it to my head, and when he gets in moods tells me, 'I will kill you.'"  She added, "[T]his is how he gets off sometimes."  Davila stated Mejia held a gun to her head two to three times.  She was terrified.  Mejia occasionally locked himself in the garage or another room for long periods of time.  She hid the gun from him, but when he found it, he held it to her head and said, "If you hid[e] the gun again, this is what is going to happen to you."

Mejia denied Davila's claim that he held a gun to her head.  He pointed out that Davila had not brought up any alleged violence during the divorce proceeding.  Mejia helped raise the children for six years with no problems, but once he discovered Davila was

4

having an affair, she served him with divorce papers and began harassing him to get him to leave the house. Mejia explained that shooting guns was a hobby, and he was taught to hunt at an early age. He denied calling Davila's daughter any names.

Mejia added that Davila had "a history of manipulation and lies," including an open case alleging welfare fraud. Mejia testified that Davila ran a business with her ex-husband, which was investigated by the FBI for racketeering and organized crime. Mejia initially stated that Davila was found guilty, but then stated "the trial is ongoing." Mejia also claimed Davila made a "report" in her prior divorce proceedings in which she claimed "the same thing," presumably referring to the allegations of abuse.

Davila denied she committed welfare fraud and denied Mejia's allegations regarding her former husband; instead, her former husband worked for the FBI. The trial court asked Davila whether she previously told anyone she was afraid of Mejia. Davila responded that she had not done so because she thought the dissolution was going to be amicable, and she did not want to subject the children to additional court proceedings.

After listening to the testimony, the trial court stated that Davila "has been credible in her account of what has happened in this case." The trial court found Davila "has satisfied her burden by a preponderance of the evidence demonstrating that abuse had taken place in the relationship." The trial court added, "In this case [Davila] has credibly indicated and demonstrated and testified to there being more than just verbal and emotional, but physical [abuse]."

Mejia interjected, "[S]he has a history of testifying lies." The trial court responded, "I don't have anything before me." Mejia stated he had a "hearing with [Davila's] name notifying the issuance of the welfare fraud." Davila responded, "I have the

5

decision, final decision dismissing all of that." The trial court stated, "I am not taking any allegations of welfare fraud [into] consideration in making this determination."

The trial court noted that Davila's request for a DVRO stated Mejia "has threatened to physically harm me." The trial court pointed out that when it asked Davila about the threat, she recounted that Mejia had held a gun to her head on three occasions. The court found Davila had met her burden, and issued the protective order to remain in place for two years, until November 27, 2018, listing Davila and her three children as protected persons.

## DISCUSSION

A.    *The DVPA*

Pursuant to the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.),[3] a court may issue a protective order "'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' upon 'reasonable proof of a past act or acts of abuse.'" (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782 (*Nevarez*); accord, § 6300.)

The DVPA defines domestic violence, as relevant here, as abuse perpetrated against a spouse or the child of a party.[4] (§ 6211,

---

[3]    Further statutory references are to the Family Code.

[4]    Mejia does not argue that Davila's children were not protected persons. Neither does he present an argument as to why the evidence was not sufficient other than his conclusory statement that the trial court issued a DVRO "despite a lack of substantial evidence to support such issuance."

6

subds. (a) & (e).)  Abuse includes "plac[ing] a person in reasonable apprehension of imminent serious bodily injury to that person or to another" or "engag[ing] in any behavior that has been or could be enjoined pursuant to Section 6320."  (§ 6203, subd. (a)(3), (4).)  Enjoined conduct includes molesting, striking, stalking, threatening, or harassing.  (§ 6320, subd. (a).)  The DVPA requires a showing of past abuse by a preponderance of the evidence.  (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 90, fn. 14; *Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137.)

B.      *Standard of Review*

We review the grant or denial of a request for a DVRO for abuse of discretion.  (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780; *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1426-1427.)  We likewise review the trial court's failure to consider evidence in issuing a DVRO for an abuse of discretion.  (See *Nevarez, supra*, 227 Cal.App.4th at p. 785 [trial court did not abuse its discretion in refusing to consider text messages before issuing DVRO].)

"'To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review.'"  (*In re Marriage of G., supra*, 11 Cal.App.5th at p. 780; accord, *In re Marriage of Evilsizor & Sweeney, supra*, 237 Cal.App.4th at p. 1424.)  "'However, "[j]udicial discretion to grant or deny an application for a protective order is not unfettered.  The scope of discretion always resides in the particular law being applied by the court, i.e., in the '"legal principles governing the subject of [the] action . . . .""'"  (*J.J. v. M.F.* (2014) 223 Cal.App.4th 968, 975; accord, *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264-1265.)

C.    *The Trial Court Did Not Err in Considering Davila's Testimony That Mejia Held a Gun to Her Head*

Although a temporary DVRO may be issued on an ex parte basis without notice (§ 6320, subd. (a)), a permanent restraining order may be issued only "after notice and a hearing" (§ 6345, subd. (a)).  Mejia does not dispute he was given notice of the hearing on the DVRO and had an opportunity to respond to Davila's allegations.  Instead, Mejia contends the trial court erred by considering Davila's testimony that Mejia held a gun to her head even though she did not make that specific allegation in her request for a DVRO.  We disagree.

Mejia does not cite any authority for his contention that testimony at the DVRO hearing is limited to the specific allegations in the party's application.  "Issues not supported by citation to legal authority are subject to forfeiture."  (*People ex rel. Alzayat v. Hebb* (2017) 18 Cal.App.5th 801, 821, fn. 10; accord, *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363 ["If a party's briefs do not provide legal argument and citation to authority on each point raised, '"the court may treat it as waived, and pass it without consideration."'"].)

Mejia also forfeited this contention by failing to object below to the trial court's consideration of Davila's testimony about Mejia's use of a gun.  (See *Nevarez*, *supra*, 227 Cal.App.4th at p. 785 [appellant waived challenge to trial court's refusal to consider text messages before issuing DVRO because she did not object in trial court]; *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 725 [appellant waived objection to issuance of injunction based on hearsay statements because appellant did not object to hearsay in trial court].)

Even if Mejia had not forfeited this argument, the trial court did not abuse its discretion in considering Davila's testimony that

8

Mejia held a gun to her head. Although Davila did not state in her request for a DVRO specifically that Mejia held a gun to her head, she stated that Mejia "has threaten[ed] to physically harm me," and requested the trial court "grant me these orders because I fear for my safety and the safety of my children."

By these statements, Davila placed Mejia on notice that she based her request for a DVRO on the threat of physical violence Mejia posed both to her and her children. Further, Mejia had an opportunity to respond to Davila's testimony, and at the hearing testified that her testimony as to the gun was false.

Our recent opinion in *In re Jonathan V.* (2018) 19 Cal.App.5th 236 (*Jonathan V.*) is not to the contrary. In *Jonathan V.*, the prosecutor gave counsel for a minor in a delinquency case notice at a pretrial conference that the People were seeking a permanent restraining order against the minor. (*Id.* at p. 238.) The minor objected based on lack of notice or a hearing before issuance of the order, and counsel requested time to prepare for the hearing. (*Ibid.*) After the trial court denied a continuance and issued a two-year restraining order, the minor appealed. (*Ibid.*)

We reversed, concluding the minor "was not provided with written notice, a description of the evidence to be used against him, a meaningful opportunity to be heard or an opportunity to present evidence in opposition to the People's request." (*Jonathan V.*, *supra*, 19 Cal.App.5th at p. 244.) Unlike the minor in *Jonathan V.*, Mejia received notice of Davila's general allegations of physical abuse and had a meaningful opportunity to present evidence in opposition to the request at a hearing. Further, in contrast to *Jonathan V.*, Mejia neither objected to the testimony nor requested a continuance to respond to Davila's testimony.

9

D.    *The Trial Court Did Not Abuse Its Discretion in Refusing To Consider Evidence To Impeach Davila*

After the trial court found Davila's testimony to be credible and decided to issue the DVRO, Mejia asserted Davila had a history of giving false testimony. Mejia stated he had a "hearing with [Davila's] name notifying the issuance of the welfare fraud." Davila responded that she had a "final decision" dismissing any fraud allegations. The trial court did not consider the proffered evidence from either Mejia or Davila, stating, "I am not taking any allegations of welfare fraud [into] consideration in making this determination." Mejia contends the trial court abused its discretion by refusing to consider his evidence of alleged welfare fraud to impeach Davila's credibility. However, there is no record of the document Mejia sought to present to the court. Mejia has therefore not met his burden to show the trial court abused its discretion in failing to consider Mejia's claimed evidence of alleged welfare fraud. (*Nevarez, supra*, 227 Cal.App.4th at p. 785.)

E.    *Substantial Evidence Supports the Trial Court's Issuance of the DVRO*

Davila and her children are protected persons under the DVPA. (§ 6211, subds. (a) [a spouse], (e) [a child of a party].) The trial court may issue a DVRO to prevent domestic violence based upon reasonable proof of a past act or acts of abuse. (§ 6300; *Nevarez, supra*, 227 Cal.App.4th at p. 782.) Substantial evidence supports the trial court's finding that Mejia committed prior acts of domestic abuse against both Davila and her children. Mejia, by holding a gun to Davila's head and threatening to kill her, committed domestic abuse by placing Davila "in reasonable apprehension of imminent serious bodily injury." (§ 6203, subd. (a)(3).) Mejia's conduct toward Davila's children, including on

10

November 2, 2016 jumping over the gate to the family home, knocking on the windows and doors, and threatening physically to abuse the children if they did not open the door, similarly constituted domestic abuse.  (See §§ 6203, subd. (a)(3) & (4), 6320, subd. (a) [abuse includes engaging in stalking, threatening, or harassing conduct].)

## DISPOSITION

The order is affirmed.


FEUER, J.

WE CONCUR:


ZELON, Acting P. J.


SEGAL, J.


11

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of ANNASTASIA ERINE DAVILA and JESUS MIGUEL DAVILA MEJIA. | B279874 |
| | (Los Angeles County Super. Ct. No. LQ020780) |
| ANNASTASIA ERINE DAVILA, | |
| Respondent, | ORDER CERTIFYING OPINION FOR PUBLICATION AND MODIFYING OPINION |
| v. | |
| JESUS MIGUEL DAVILA MEJIA, | NO CHANGE IN JUDGMENT |
| Appellant. | |

THE COURT:*

The opinion in the above-entitled matter filed on October 23, 2018, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

It is further ordered the opinion be modified as follows:

1

1. On page 2, in the first paragraph, delete the last sentence, "We affirm."

2. On page 2, after the first paragraph add the following new paragraph with a footnote:

> Mejia's contentions lack merit. Davila's general allegations in her DVRO request, that Mejia threatened to physically harm her and she feared for her safety, placed Mejia on notice that Davila would testify at the DVRO hearing about Mejia's specific threats of physical violence, including that he held a gun to her head on two or three prior occasions. Mejia had a meaningful opportunity to respond to the specific allegations at the hearing, and to request a continuance if he needed additional time to respond. The Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.)[1] does not impose on a victim of domestic abuse a pleading obligation that he or she describe all individual actions taken by the alleged abuser in the DVRO request in order later to testify about those acts at the hearing, as long as the alleged abuser is placed on notice of the general allegations. Mejia had that notice. We affirm.
>
> ---
>
> [1] Further statutory references are to the Family Code.

3. On page 6, in the first paragraph under subheading A., delete the phrase, "Pursuant to the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.)" and footnote 4, and replace it with, "Pursuant to the DVPA," so that it reads:

2

Pursuant to the DVPA, a court may issue a protective order "'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' upon 'reasonable proof of a past act or acts of abuse.'"

4. On page 8, in the third full paragraph, replace the word "waived" with "forfeited" the two times it appears in the parentheticals.

5. On page 9, delete the last paragraph and replace it with the following:

We reversed, concluding the minor "was not provided with written notice, a description of the evidence to be used against him, a meaningful opportunity to be heard or an opportunity to present evidence in opposition to the People's request." (*Jonathan V.*, *supra*, 19 Cal.App.5th at p. 244.) Unlike the minor in *Jonathan V.*, Mejia received notice of Davila's general allegations of threatened physical abuse and had a meaningful opportunity to present evidence in opposition to the request at a hearing. Further, in contrast to *Jonathan V.*, Mejia neither objected to the testimony nor requested a continuance to respond to Davila's testimony. (See § 245, subds. (a) [respondent entitled to one continuance "as a matter of course" to respond to petition for DVRO], (b) [hearing on request for DVRO

may be continued for good cause upon request by either party].)

6. Adjust the remaining footnote numbers in accordance with the above changes to footnotes.

There is no change in the judgment.

---

\*      ZELON, Acting P. J.     SEGAL, J.      FEUER, J.