Filed 6/17/21  Verde v. Hernandez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| LISSY BERRIOS VERDE, | B306724 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20CMRO00344) |
| v. | |
| RICARDO HERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Los Angeles County Superior Court, Armando Duron, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Ricardo Hernandez, in pro. per., for Appellant.

No appearance for Plaintiff and Respondent.

———————————

Ricardo Hernandez appeals from a domestic violence restraining order (DVRO) issued in favor of his daughter's mother, Lissy Berrios Verde.  Hernandez contends the trial court

abused its discretion in issuing the DVRO because the court relied on Verde's false testimony that he had sent threatening text messages to her. Because the trial court did not abuse its discretion in issuing the DVRO under Family Code sections 6203 and 6320,[1] we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Verde's Request for a DVRO*

On March 2, 2020 Verde filed a request for a DVRO against Hernandez in which she stated Hernandez sent threatening messages to her.[2] Verde explained, "I fear for my life. Ricardo Hernandez has sent me text messages with threats[;] at this moment I am very scared, I [have] been very mentally damage[d]." Verde requested protection for her and her 13-year-old son Jooslan because Hernandez stated in his text messages that "he was going to send someone to beat [Jooslan] up at school." Verde also requested the court modify a current custody order to provide sole legal and physical custody over her and

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

[2] On our own motion we augment the record to include Verde's March 2, 2020 request for domestic violence restraining order, request for child custody and visitation orders, notice of court hearing, and temporary restraining order; the February 21, 2017 criminal protective order—domestic violence; and Hernandez's May 1, 2020 response to request for domestic violence restraining order. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

Hernandez's six-year-old daughter Dana "for [her] daughter['s] safety."

Verde declared that on December 19, 2016 Hernandez pushed her against the wall and hit her chest with his head. She suffered redness in her chest and shoulder. Verde also lodged a copy of a three-year criminal domestic violence restraining order issued against Hernandez on February 21, 2017, which protected Verde and Dana.

The court issued a temporary restraining order on March 2, 2020, protecting Verde, Jooslan, and Dana. The court set a hearing on a permanent restraining order for March 24, 2020, which was later continued until June 30.

On May 1, 2020 Hernandez filed a response in which he declared that Verde "has issues with [him] and wants to ruin [his] life by making false accusations to the authorities." He claimed it was Verde who was "the one calling or texting me [with] threatening messages or demanding I do what she wants or I can't see Dana anymore." He asserted he was a loving father to Dana and a father figure to Jooslan. He objected to issuance of a restraining order keeping him from Dana, stating Dana was safe with him.

B.      *The Hearing and Issuance of the DVRO*

On June 30, 2020 the trial court held a hearing on Verde's request for a DVRO at which both Verde and Hernandez testified. Verde and Hernandez affirmed the statements they made under penalty of perjury in their request and response, respectively, were true and correct. The court then asked both parties whether there was anything else they wanted to add.

3

Verde testified that Hernandez "has continued bothering me." She explained that Hernandez had "sent messages to [her] through different numbers" telling her he was going to call the social workers to report that Verde was living in a house of prostitution, selling drugs, and abusing the children. At the time there was a juvenile court custody order in place. Verde showed the court a photograph of a key to her car, stating that Hernandez had stolen the key from her. Verde responded by calling the police. Verde also asserted that Hernandez broke her car window on May 12, 2020 at 2:20 in the morning.[3]

Verde provided the court with copies of the text messages she stated Hernandez sent her. An August 19, 2019 message stated, "You'll see, bitch. You're going to pay for it. Your mouth will be torn. You will be left without teeth, and it will go badly for your son, as well." Verde testified, "I'm just concerned for my daughter and my son, too."

Hernandez testified he did not send the text messages to Verde, and the cell phone number from which the messages were sent did not belong to him. Hernandez denied that he had taken Verde's car key. Hernandez asserted he had over 1,000 pages of text messages sent between his and Verde's phones that showed "civil conversations" between the two of them with only "disagreements." The court asked whether Hernandez wanted to present the messages to the court, to which Hernandez responded, "If you need to see them." The court stated, "I don't need to see anything. It's up to you whether or not you want to present something to me." Hernandez responded, "I mean, no."

---

[3] Verde testified "a white van broke my car's window" as an example of how Hernandez continued to "bother[]" her.

4

The court then inquired of Verde whether the text messages were from Hernandez's phone, to which she responded, "They're apps. He's used to doing things that are related to crime. He thinks he's going to be able to lie to the law."

The trial court found that Verde met her burden by a preponderance of the evidence, and on that basis issued a five-year DVRO. The court explained it "found [Verde] credible with respect to the allegations and what [the court] read in those text messages." Hernandez interjected, "They're not mine." The court responded, "Well, I'm sorry to say, I found her credible. Okay? You didn't present any evidence to the contrary."

The DVRO prohibited Hernandez from harassing or contacting Verde, Jooslan, and Dana and required Hernandez to stay at least 100 yards away from Verde's home, workplace, and vehicle, as well as the children's school and child care. The court also entered a child custody and visitation order granting Verde sole legal and physical custody of Dana with monitored visitation for Hernandez for three hours on the first, third, and fifth Saturdays of the month. Hernandez objected to the change from joint to sole legal custody and the requirement that he only have monitored visitation.

Hernandez timely appealed.

## DISCUSSION

A. *Standard of Review*

"We review the grant or denial of a request for a DVRO for abuse of discretion." (*In re Marriage of Davila and Mejia* (2018) 29 Cal.App.5th 220, 226 (*Davila*); accord, *Herriott v. Herriott* (2019) 33 Cal.App.5th 212, 223 (*Herriott*); *In re Marriage of G.*

(2017) 11 Cal.App.5th 773, 780.) ""'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'"  (*In re Marriage of G.*, at p. 780; accord, *Herriott*, at p. 223 [""'A trial court's exercise of discretion will not be disturbed on appeal unless, as a matter of law, an abuse of discretion is shown—i.e.,— where, considering all the relevant circumstances, the court has 'exceeded the bounds of reason' or it can 'fairly be said' that no judge would reasonably make the same order under the same circumstances."'"]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 ["'[U]nless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.'"].)

""'"To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review."'"  (*Davila, supra*, 29 Cal.App.5th at p. 226; accord, *Herriott, supra*, 33 Cal.App.5th at p. 223; *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1424 (*Evilsizor*).)  ""'"We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment."'"  (*Evilsizor*, at p. 1424; accord, *Herriott*, at p. 223.)  We defer to the trial court's evaluation of credibility.  (*Herriott*, at p. 223 ["It was for the trial court to weigh the evidence and consider the demeanor and credibility of the witness, as 'credibility issues [are] routinely resolved by [the] trier[] of fact.'"]; *Evilsizor*, at p. 1426 ["the trial

court was in the best position to evaluate credibility and to resolve factual disputes"].)

B.    *The Domestic Violence Prevention Act*

The Domestic Violence Prevention Act (DVPA; § 6200 et seq.) allows a trial court to issue a protective order ""to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved" upon "reasonable proof of a past act or acts of abuse.""" (*Davila, supra*, 29 Cal.App.5th at p. 225; accord, *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782; see § 6300, subd. (a) [restraining order may be issued upon showing of "reasonable proof of a past act or acts of abuse"].)  The DVPA defines domestic violence to include "abuse perpetrated against . . . [¶] . . . [a] person with whom the respondent has had a child . . . ." (§ 6211, subd. (d).)  "Abuse includes 'plac[ing] a person in reasonable apprehension of imminent serious bodily injury to that person or to another' or 'engag[ing] in any behavior that has been or could be enjoined pursuant to Section 6320.'  (§ 6203, subd. (a)(3), (4).)." (*Davila, supra*, 29 Cal.App.5th at p. 226.)

Section 6320, subdivision (a), includes as conduct that may be enjoined, "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, . . . harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party . . . ." (See *Hogue v. Hogue* (2017) 16 Cal.App.5th 833, 839 ["The act of purposefully sending a video of a mock suicide to plaintiff in

California . . . is indisputably conduct that would disturb plaintiff's peace of mind within the meaning of the act and be the basis for granting a restraining order"]; *Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 398 ["'[P]rotective orders can be issued because of persistent unwanted phone calls or letters—which fall into the same category as "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, [or] harassing" the protected party.'"]; *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1144 [ex-boyfriend's continued contact with plaintiff by phone, email, text, and unannounced visit to her home to beseech her to renew their relationship constituted abuse under the DVPA].)

C.    *The Trial Court Did Not Abuse Its Discretion in Issuing the DVRO*

Hernandez contends substantial evidence does not support issuance of the DVRO because the text messages introduced at the hearing were not "properly validated," and there was no showing that the text messages came from Hernandez.  However, Verde testified the messages were sent from Hernandez's phone.  Although Hernandez denied that he sent the text messages, the court found Verde credible and noted that Hernandez failed to present any evidence to rebut Verde's showing.  The court invited Hernandez to submit evidence of the thousands of pages of "civil" text messages Hernandez claimed were sent between his and Verde's cell phones, but Hernandez declined to do so.  Under section 6300, subdivision (a), "[t]he court may issue an order . . . based solely on the affidavit or testimony of the person requesting the restraining order."  Further, "[e]vidence of even one credible witness 'is sufficient for proof of any fact.'"  (*Sav-On*

8

*Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 334; accord, *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 ["'The testimony of a witness, even the party himself [or herself], may be sufficient.'"]; see Evid. Code, § 411 ["Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact."].) We defer to the trial court's credibility findings. (*Herriott, supra*, 33 Cal.App.5th at p. 223; *Evilsizor, supra*, 237 Cal.App.4th at p. 1426; see *In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703.)

The trial court did not abuse its discretion in issuing the DVRO based on the substantial evidence of Hernandez's prior abuse, including his physical abuse in 2016, his threat to beat up Verde's 13-year-old son Jooslan, and his August 19, 2019 threat in which he stated Verde would "pay for it," her "mouth will be torn," she would "be left without teeth," and "it will go badly for [her] son." Verde also testified that Hernandez had sent multiple messages to her stating he planned to tell the social workers (presumably in the juvenile dependency proceeding) that Verde was living in a house of prostitution, selling drugs, and abusing her children. Further, Verde testified Hernandez stole the key to her car.[4] Verde testified Hernandez's conduct was continuing (he "has continued [to] bother[] me"), and she feared for her life, feared for her children's safety, was "very scared," and was "very mentally damage[d]." By presenting this evidence, Verde met her burden by a preponderance of the evidence to show Hernandez

---

[4] Hernandez argues the court failed to require Verde to "validate" that he had taken her car key by showing the key to the court to match the photograph, but the court relied on Verde's testimony, which it found credible.

9

engaged in conduct that was threatening, harassing, and disturbed Verde's peace of mind.  (§§ 6203, subd. (a)(4), 6320, subd. (a); see *Perez v. Torres-Hernandez, supra*, 1 Cal.App.5th at p. 398; *Burquet v. Brumbaugh, supra*, 223 Cal.App.4th at p. 1144.)

## DISPOSITION

The order is affirmed.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.