Filed 4/2/25  Inglett v. Inglett CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SRI INGLETT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BILLY INGLETT,<br><br>    Defendant and Respondent. | B335210<br><br>(Los Angeles County<br> Super. Ct. No. 21AVRO00702) |

APPEAL from an order of the Superior Court of Los Angeles County.  Valerie L. Skeba, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Paul Hastings, Ben Nicholson, Nicole Tackabery and Colton J. Walker for Plaintiff and Appellant.

Law Office of Sabrina L. Roque, Sabrina Roque; Parmar Law and Ravi Parmar for Defendant and Respondent.

\* \* \* \* \* \* \* \* \* \*

Plaintiff Sri Inglett, also known as Sara, and defendant Billy Inglett were married in July 2017.  In 2021, plaintiff filed

an application for a domestic violence restraining order (DVRO) against defendant pursuant to the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.; Act) based on two acts of alleged physical abuse. Several weeks later, defendant filed an action for dissolution of their marriage and also sought a DVRO against plaintiff based on alleged cyber abuse. Following a joint evidentiary hearing on both DVRO applications, the court denied plaintiff's application and granted defendant's.

Plaintiff now appeals, contending the trial court applied the incorrect legal standard in denying her application and made arbitrary credibility findings in rejecting her evidence of abuse. Plaintiff also purports to challenge the court's order granting a DVRO in favor of defendant.

We reject plaintiff's contentions and affirm the denial of her application. With respect to the order granting defendant's DVRO application in the dissolution action, we conclude plaintiff failed to perfect an appeal.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff emigrated to this country from Indonesia as a teenager in 2003. She and defendant met in 2014 through an online dating service, and she eventually moved into defendant's home in Lancaster. The two married in July 2017.

In June 2021, plaintiff filed an application for a DVRO against defendant based on two incidents of physical abuse (Super. Ct. L.A. County, No. 21AVRO00702). Plaintiff's supporting declaration described an incident in January 2017, before the parties were married, where defendant strangled her, sat on her neck, "smashed" her to the ground "many, many times," and locked her out of the house in cold weather. The second incident occurred on May 30, 2021. On that date, plaintiff

2

said defendant pushed her, sat on her legs to prevent her from escaping their home, and blocked both of her hands. Plaintiff reported she was left with "lots of bruises and tenderness" on both legs and "tenderness" on her arms.

Thereafter, defendant filed a separate action seeking a dissolution of their marriage (Super. Ct. L.A. County, No. 21AVFL00593). In that action, defendant requested a DVRO against plaintiff based on claims she was engaging in cyber abuse and harassment. In his supporting declaration, defendant said plaintiff was routinely controlling and distrustful, which he tried to excuse, believing it was due "to the trauma she suffered throughout her life." Defendant eventually grew tired of plaintiff's behavior and on May 15, 2021, he told her he wanted a divorce. On June 7, 2021, plaintiff began "cyber attacks" against him, including logging into his e-mails and digital accounts without permission and creating false social media accounts in his name.

## 1.    Joint Evidentiary Hearing

The parties agreed to a joint evidentiary hearing on both applications. The two actions remained separate and were not consolidated. The joint hearing took place over eight days spread out over several months. Both plaintiff and defendant testified. Defendant called four witnesses, including an expert. Plaintiff did not call any witnesses.

Plaintiff testified in greater detail about the two incidents of physical abuse stated in her declaration. She said the abusive conduct in January 2017 included defendant grabbing her by the neck, chasing her around the house, picking her up and slamming her to the ground, kneeling on her, cursing at her, pulling her hair, punching her in the face, dragging her outside,

kicking her in the stomach and locking her outside in the cold with no coat or shoes.

Plaintiff identified several pictures of bruises and a scratch that she said she suffered in the incident. She also testified that defendant told her not to testify against him and made her go to Florida to stay with his parents so the prosecutor could not find her.

As for the incident on May 30, 2021, plaintiff said defendant was drunk and raped her, which he had done on numerous other occasions. Afterward, she locked the bedroom door and stayed there for some time because she was scared before eventually calling the police. Plaintiff said she did not tell the police that defendant had raped her because she was embarrassed. She identified pictures showing bruising on both legs that she said happened during the rape.

Defendant denied plaintiff's allegations of abuse. He said the January 2017 incident occurred during a visit from his childhood friend, David Dehart. Plaintiff woke up from a nap and wanted to watch a movie and became angry with defendant because he was watching music videos with Mr. Dehart. Defendant said Mr. Dehart tried to play "mediator" to help resolve the disagreement, but plaintiff "lunged" at defendant and slapped him in the face. He put his arms up to try to defend himself. Plaintiff was very upset and "flailing" at him, so defendant grabbed her arms to try to block her. He was knocked off balance and they both fell to the floor. Defendant admitted he struggled with plaintiff for a while until she eventually stopped fighting with him. Defendant said he was angry and told plaintiff to leave the house. Defendant assumed plaintiff called a friend to pick her up.

4

Defendant testified it was plaintiff's idea to go stay with his father in Florida so she could avoid testifying. The charges against him were ultimately dismissed.

Defendant denied ever raping plaintiff. He said the incident on May 30, 2021 began with plaintiff repeatedly banging on his bedroom door while he was sleeping. By that time, defendant had already told plaintiff he wanted a divorce, and he had moved into the guest bedroom. Plaintiff was upset and accused him of blocking her from their bank account. Defendant said he had not done anything to the account, but he accessed the account online, changed the password and gave her the new password so she could use the account. Later in the day, defendant found plaintiff in her room, talking to 911 and telling the operator he was going to hurt her and to send the police. Defendant waited outside for the police to arrive. He was arrested but the charges were ultimately dismissed.

Defendant conceded that he and plaintiff did sometimes drink and get drunk, but he denied that drinking caused him to act violently toward plaintiff. Defendant explained that in the spring of 2021, plaintiff often complained of feeling dizzy or having panic attacks. She reported to him several times that she had fallen and suffered bruises. Text messages between plaintiff and defendant during this time showed plaintiff telling defendant that her leg and backside hurt from falling down the stairs. Copies of other text messages showed plaintiff asking defendant to come home from work and take her to the doctor because she had fallen and lost consciousness.

David Dehart testified about the January 2017 incident. Mr. Dehart said that he and defendant were drinking and watching music videos while plaintiff took a nap. When she

5

awoke, plaintiff became upset because she wanted to watch a movie instead of music videos. Plaintiff and defendant began to argue, with plaintiff raising her voice and defendant following suit. Mr. Dehart said they began to argue "above [his] comfort level" so he tried to "deescalate" the situation. Mr. Dehart told them to sit down and try talking things out more calmly.

Mr. Dehart said that at some point, plaintiff jumped up, "rushed" at defendant and slapped him in the face two or three times. Defendant stood up and raised his arms, palms facing out, blocking plaintiff's efforts to hit him. Plaintiff then started to kick defendant. Defendant grabbed her arms and eventually they both fell to the floor, sort of wrestling with one another. Defendant was yelling at plaintiff to stop. Defendant told plaintiff she should leave, and she did. Later that night, the police arrived and arrested defendant. Mr. Dehart said he decided to cut his vacation short and go back home because he was upset by plaintiff's behavior and did not want to be at the house with her.

Susan Marfleet testified that she met plaintiff sometime in 2020 through another friend. At the time of the hearing, they were no longer friends. They had gotten into a disagreement over plaintiff contacting Ms. Marfleet's former boyfriend on social media. After their falling out, Ms. Marfleet said plaintiff harassed her online. Ms. Marfleet said her opinion of plaintiff changed over time because she caught plaintiff "lying about things" and found her to be "extremely manipulative."

Ms. Marfleet said plaintiff talked about defendant a lot but she only recalled plaintiff mentioning one physical altercation with defendant and it only involved him pushing her. Plaintiff said that she had gotten into a verbal argument with defendant

6

after he returned from a trip to Oklahoma, and she confronted him about "cutting off" her credit card. Plaintiff said defendant "pushed her" during that argument, that plaintiff called the police, and defendant was arrested. Ms. Marfleet said plaintiff was "very, very angry" about the incident.

Ms. Marfleet also recounted a Fourth of July weekend when plaintiff stayed over at her beach house. She said plaintiff spent a lot of time on her laptop "checking what [defendant] was up to that weekend." Plaintiff showed Ms. Marfleet she had access to defendant's e-mails and various digital accounts, including Google, and had discovered that defendant had purchased concert tickets. Plaintiff told her she wanted to get somebody "to go spy" on defendant. Plaintiff also told her she wanted someone to follow defendant and get a picture of him drinking because she believed she could get defendant fired from his job with the federal government.

David Richman rented a room from defendant and plaintiff for most of 2021. He testified they seemed to have a typical marriage with ordinary disagreements, but he never saw any physical violence or loud shouting.

On May 30, 2021, Mr. Richman said the house was very quiet when he came home from work. He did not see defendant or plaintiff. After he had been home for a while, Mr. Richman received a text from plaintiff asking him to call 911. She said she was hiding in the bedroom because she was scared of defendant. He had no idea what would have caused plaintiff to be scared. He was aware the police did arrive later and arrested defendant. Mr. Richman later moved out of the Lancaster house at plaintiff's request.

Robert Beegle testified as an expert in digital forensics in support of defendant's allegations that plaintiff had engaged in online harassment and cyber abuse.

## 2. The Trial Court's Oral and Written Rulings

### a. The oral ruling

On October 5, 2023, after closing arguments, the court issued an oral ruling from the bench as to both applications.

In denying plaintiff's application, the court said it was "striking" that plaintiff answered so many questions with "I don't know" or "I don't recall," estimating that it was over 90 times. The court found plaintiff to be evasive and questioned her general veracity. The court believed plaintiff had fabricated parts of her testimony about what had happened with defendant, including being raped in May 2021, in order to appear more sympathetic. The court also believed plaintiff had lied to the court about scheduling issues. The court said it did not credit every aspect of defendant's testimony, but the court did not believe plaintiff's testimony "at all."

The court also said it found both Ms. Marfleet and Mr. Beegle generally to be credible, both of whom bolstered and corroborated aspects of defendant's testimony.

The court granted defendant's application for a DVRO, explaining defendant had established by a preponderance of the evidence that plaintiff "broke into [defendant's] computer, that she was surveilling him, canceling accounts, ordering things and masquerading as [defendant]" online."

### b.    The statement of decision

On November 6, 2023, the court issued a written decision denying plaintiff's application in case No. 21AVRO00702.

The court said it found plaintiff lacked credibility and referenced its oral findings of October 5, 2023.  The court said it had previously "outlined the general concerns about [plaintiff's] truthfulness and listed 11 examples of statements by [plaintiff] that the Court found to be deceptive, including an outright lie to the Court about her reason for missing a court date.  The Court also commented on her general evasiveness—noting over 90 times she responded that she didn't remember, or she didn't know to questions asked of her."

The court explained it had "carefully reviewed" plaintiff's testimony and the exhibits "several times in order to determine if there were any statements of [plaintiff's] that would allow the Court to have confidence in their truthfulness."  But ultimately the court found plaintiff's testimony to be "so evasive and deceptive, that the Court was not able to believe anything that she had testified to."

As for defendant's testimony, the court said it did not believe everything defendant said but nonetheless found him to be more credible than plaintiff, and his testimony was "bolstered by other witnesses such as Mr. Beegle and Ms. Marfleet."

The court emphasized it "had ample opportunity to see and hear all of the witnesses testify concerning their observations of the parties, their statements in their declarations, as well as numerous exhibits."  Further, "the Court heard [plaintiff] testify for 3 days and [defendant] for 4 days.  They were extensively questioned about their declarations and exhibits and subjected to intensive cross-examination.  These isolated screenshots and

9

other exhibits do not outweigh the probative value of this type of in-person testimony.  The ultimate outcome in this rests primarily on the credibility of the parties while they were testifying in court, along with the testimony of the two other witnesses which the Court found to be credible and reliable— Ms. Marfleet and Mr. Beegle."  The court also noted that plaintiff's actions after the May 2021 incident were not consistent with her testimony that she feared defendant.

This appeal followed.

## DISCUSSION

### 1.    Plaintiff's DVRO Application

#### a.    Standard of review

We review the grant or denial of a request for a DVRO under the deferential abuse of discretion standard.  (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226.) " ' "To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review." ' "  (*Ibid.*; accord, *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 116.)

In denying plaintiff's DVRO application, the trial court made explicit credibility findings adverse to plaintiff.  "Of course, ' "[c]redibility determinations . . .  are subject to extremely deferential review" ' [citation], and ' "[a] trier of fact is free to disbelieve a witness . . . if there is any rational ground for doing so." ' "  (*Vinson v. Kinsey* (2023) 93 Cal.App.5th 1166, 1176 (*Vinson*).)  As a reviewing court, it is not our role to judge the credibility of witnesses or reweigh the evidence.  (*Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 578-579.)

Plaintiff, citing *Vinson*, attempts to avoid the application of these well-established principles by urging us to find the trial

court committed legal error by applying an incorrect legal standard in exercising its discretion under the Act and that our review is therefore de novo. She contends *Vinson* held it was error for a trial court to deny a DVRO based on post-abuse actions by the victim, and to require the victim to prove fear of bodily harm. She says the same legal errors were made by the trial court in denying her application.

Plaintiff's argument is without merit. *Vinson* did not hold that a court may not consider post-abuse conduct in ruling on a DVRO application. *Vinson* concluded the trial court abused its discretion because it denied the plaintiff's application without consideration of the totality of the circumstances required by Family Code section 6301, subdivision (d). (*Vinson, supra*, 93 Cal.App.5th at p. 1180.) *Vinson* explained it was compelled to so conclude because the trial court had focused too narrowly on only one incident of the defendant's threatening behavior, had "indicated the threat [the plaintiff] described did not warrant a protective order because the court did not believe [she] took this threat seriously, and gave no indication it considered the evidence [she] submitted of additional threats and repeated verbal and physical abuse." (*Ibid*.) *Vinson* did not say or imply that post-abuse conduct by the parties is irrelevant to the totality of circumstances analysis.

### b.    Analysis

Giving due deference to the trial court's explicit credibility findings, we find no abuse of discretion in the court's denial of plaintiff's application.

The court heard testimony from plaintiff, defendant, and four witnesses over the course of seven days. In addition to the testimony and multiple exhibits presented during the evidentiary

11

hearing, the court also reviewed the parties' written declarations and filings.  The court emphasized it had "carefully reviewed" plaintiff's testimony and exhibits "several times" before reaching its decision.  Nothing in the record suggests the court took lightly its obligation to carefully consider all of the evidence.  After engaging in such review, the court said it found the testimony of the parties to have the most probative value and ultimately came to the conclusion that defendant's testimony, corroborated in many aspects by the testimony of Ms. Marfleet and Mr. Beegle, was more credible than plaintiff's.  The court's oral and written rulings reflect that it considered the totality of the circumstances in reaching its decision as required by Family Code section 6301, subdivision (d).

Plaintiff makes too much of the court's statement at the end of its written decision that plaintiff's application for a DVRO "appears to have been triggered by [defendant's] decision to file for divorce, rather [than] fear of him."  The court was not imposing a "fear" requirement not contained in the statute.  The statement appears to be nothing more than a reflection of the court's credibility findings.

Defendant had testified, both in his declaration and during the hearing, that he told plaintiff by May 15, 2021, that he wanted a divorce, and that he moved out of their master bedroom and into the guest bedroom before the incident of May 30, 2021. The court noted that plaintiff made overtures to defendant after May 30 that seemed inconsistent with her claims of abuse, ultimately filing her application on June 10, 2021.  That the court had doubts about plaintiff's motivation for filing her application is consistent with the court's overall credibility findings and does not undermine the court's decision.  We also reject plaintiff's

12

argument the court's credibility findings were arbitrary and without evidentiary support.

## 2. Defendant's DVRO

In her briefs to this court, plaintiff challenges the propriety of the DVRO granted in favor of defendant. However, nothing in the record demonstrates that plaintiff perfected an appeal as to that order which was issued in case No. 21AVFL00593.

Plaintiff began the superior court proceedings below by filing an application for a DVRO against defendant, and the action was assigned case No. 21AVRO00702. Two weeks later, defendant filed a *separate action* seeking a dissolution of their marriage and also requesting his own DVRO against plaintiff. The dissolution action was assigned case No. 21AVFL00593. The parties agreed to a joint evidentiary hearing on their respective DVRO applications, but nothing in the record or briefing indicates the two separate cases were ever consolidated.

On October 5, 2023, the last day of the joint hearing, the court orally announced its decision on both matters, denying plaintiff's DVRO and granting defendant's. On November 6, 2023, the court issued a written decision denying plaintiff's application. The written decision was issued only in case No. 21AVRO00702 and addressed only the denial of plaintiff's application. Plaintiff timely filed a notice of appeal challenging the denial of her application, and the only case number stated in the notice of appeal filed with this court is case No. 21AVRO00702. Plaintiff's notice of appeal does not include any reference to case No. 21AVFL00593, nor is there any record of plaintiff filing a separate notice of appeal under that case number.

13

Notices of appeal are ordinarily liberally construed.  But
" ' "[o]ur jurisdiction on appeal is limited in scope to the notice of
appeal and the judgment or order appealed from."  [Citation.]  We
have no jurisdiction over an order not mentioned in the notice of
appeal.' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 75.)

Plaintiff says her notice of appeal references the court's oral
decision of October 5, 2023, in which the court made rulings on
both DVRO applications.  She contends her notice of appeal
therefore should be liberally construed to apply to the DVRO
rulings in both cases even though the notice identifies only case
No. 21AVRO00702.  We do not agree.

Plaintiff's case and defendant's separate dissolution action
were never consolidated.  Plaintiff fails to explain how the notice
she drafted and filed with only her case number gave fair notice
that she intended to appeal the court's order in defendant's
separate action as well.  While plaintiff timely gave notice and
perfected an appeal of the court's ruling denying her DVRO
application in case No. 21AVRO00702, we conclude we have no
jurisdiction to consider her contentions regarding the court's
ruling on defendant's DVRO in case No. 21AVFL00593.

**3.     Plaintiff's Motion to Augment**

Plaintiff filed a motion to augment the appellate record to
include the exhibits defendant submitted in support of his DVRO
application in case No. 21AVFL00593—the case over which we
have concluded we have no appellate jurisdiction.  Plaintiff's
motion to augment was filed on December 23, 2024, *12 months
after* plaintiff's notice of appeal was filed, and *after* briefing was
complete.  Counsel's brief declaration in support of the motion
states that on September 11, 2023, while representing plaintiff in
this case, he moved to a new law firm and it was "[n]ot until

14

December 2024" when he was able to obtain all but one of the exhibits.

As we explained above, plaintiff did not timely perfect an appeal from the court's decision to grant defendant's DVRO in case No. 21AVFL00593, and the motion fails to articulate any reason why defendant's exhibits, many of which pertained to his DVRO application for cyber abuse, are useful or necessary to this appeal.

Furthermore, there is nothing in counsel's one-page declaration that explains what caused the delay in obtaining copies of all of the exhibits, or the delay of over a year in filing the motion. In September 2023 when counsel said he transferred to a new law firm, he was involved in the joint evidentiary hearing in this case, including an appearance on September 29, 2023, when testimony was received from defendant, and again on October 5, 2023, when the parties made closing arguments to the court. Counsel offers no explanation for why he did not have access to or the ability to make copies of the exhibits at that time, nor any explanation for what hampered his ability to obtain copies over the course of the year after the hearing concluded.

California Rules of Court, rule 8.155, provides that a motion to augment may be made at any time. However, whether a motion to augment "is made within a reasonable time" is a relevant factor the reviewing court may consider in ruling on the motion. (*Ibid.*, Advisory Com. com.) Plaintiff has failed to make any showing that the motion to augment was made within a reasonable time.

15

## DISPOSITION

The order denying plaintiff and appellant Sri Inglett's application for a domestic violence restraining order is affirmed. Plaintiff's motion to augment the appellate record is denied.

Defendant and respondent Billy Inglett shall recover costs of appeal.


GRIMES, J.


WE CONCUR:


STRATTON, P. J.


VIRAMONTES, J.