Filed 12/22/25  Silvera v. Shorter CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JOVITA SILVERA, | B336666 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 23IWRO00747) |
| v. | |
| LECIA SHORTER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Patricia J. Titus, Judge.  Affirmed.

Lecia Shorter, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

On August 1, 2023, the trial court granted respondent Jovita Silvera's request for a domestic violence restraining order against her sibling, appellant Lecia Shorter, protecting both Jovita and Sondra Shorter, Jovita and Lecia's mother.[1]  In her appellate brief, Lecia claims she "inadvertently calendared the hearing date for August 6, 2023, and as a result was not present for the DVRO hearing."  Lecia argues the court erred by not recusing itself when it harbored bias against Lecia, and by granting the request for a restraining order when no evidence supported it.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Jovita Requests a Restraining Order*

In July 2023, Jovita filed a request for a domestic violence restraining order against Lecia, asking for an order protecting herself and their 81-year-old mother, Sondra.  Jovita claimed Lecia "threatened to get 'rid' of me," "made threats to other siblings against me to sue me for unknown reasons," and "called me several names and stated something will happen to me if I am her enemy because I'm caring for my mom."  Jovita alleged Sondra was "suffering from dementia and early stages of Alzheimer's," and Lecia was "unstable and trying to [de]fraud my mother of her property and retirement."  Jovita also asserted Lecia "threatened my mom" and "kicked her out of her home" while "cursing her and verbally abusing her."  Jovita specified the verbal abuse of her mother and threats to her siblings occurred in

_____

[1] Because some of the parties share a surname, we refer to everyone by their first name.

June 2023, and the threats to Jovita occurred in July 2023, the same day the request for a DVRO was filed.

## B.    *The Court Grants Jovita's Request*

On August 1, 2023, the court held a hearing on Jovita's request; Lecia was not present. Before the hearing began, the court let Jovita know it recognized Lecia's name, knew Lecia was a lawyer, and had just discovered Lecia was disbarred when the court "looked it up." The court stated it was not Lecia's friend and had not seen or heard from her. After the court assured Jovita it could be unbiased, Jovita said she was "fine" with the court hearing the request.

The court informed Jovita that she provided insufficient information in her papers to obtain a restraining order, so she should explain to the court why she felt one was necessary. The minute order from the hearing reflects Jovita was "placed under oath and testifie[d]."

Jovita informed the court that, on July 10, there was a conservatorship hearing for her mother, Sondra, and Lecia was in the audience. Lecia did not think Sondra needed help and had been fighting the other siblings' attempt to establish a conservatorship.[2] When Lecia discovered Jovita had obtained a "capacity declaration" for Sondra, Lecia kept repeating "we got to get rid of this bitch"—referring to Jovita—because Sondra was living with Jovita, and Jovita was Sondra's caretaker.

---

[2] Jovita stated that, out of her four siblings, Lecia was the only one who believed Sondra did not need help and the only one who opposed the conservatorship. Jovita reported her brother Daniel would be the conservator.

3

Two or three days after the court hearing, Lecia came to Jovita's home and coaxed Sondra to climb over a six-foot gate; Sondra fell to the other side of the gate. Jovita claimed to "have that on my Ring video." Jovita also said she had footage of Lecia "cursing" and "trying to fight me in the front yard." Jovita offered to show the court the video, but the court stated it did not need to see it.

Jovita claimed Lecia was stoking Sondra's fear and paranoia to disrupt the siblings' estate planning, doing things such as taking Sondra from the home without telling the siblings where they were, resulting in Sondra not having her medication, or accusing Jovita of stealing Sondra's blueberry juice. Jovita believed Lecia was "speeding up [Sondra's] dementia" by "causing so much turmoil" and worsening Sondra's hysteria and paranoia. Jovita related the siblings were "trying to introduce new positive reinforcements" for Sondra but could not do so "when Lecia keeps coming in, snatching her, taking her, feeding her all this negativity, making her feel like it's 1985 and she doesn't have a problem." Jovita claimed Lecia had taken some of Sondra's money and that "even . . . last week," Lecia was "trying to take my mom to sign contracts with her diminished capacity outside of us and secretly."

The court found Jovita had "met the burden of proof for a restraining order," adding the court had independently run Lecia's name through CLETS (the California Law Enforcement Telecommunications System) and found some "misdemeanor convictions for her violence." The court issued a five-year restraining order, requiring Lecia not to contact or communicate with, and to stay away from, Jovita and Sondra.

Lecia timely appealed the court's order.[3]

## DISCUSSION

### A.  *We Deny Lecia's Request for Judicial Notice*

Citing Evidence Code section 459, Lecia requests in her opening brief that we take judicial notice of "the Court docket, files and records" in "[t]he conservatorship proceeding in Los Angeles Superior Court Case No. 22STPB12451."  But "[t]o obtain judicial notice by a reviewing court under Evidence Code section 459, a party must serve and file a separate motion with a proposed order."  (Cal. Rules of Court, rule 8.252(a)(1).)  Additionally, "[i]f the matter to be noticed is not in the record, the party must attach to the motion a copy of the matter to be noticed or an explanation of why it is not practicable to do so."  (*Id.* at rule 8.252(a)(3).)  Lecia neither filed a motion nor included a copy

---

[3] In her opening brief on appeal, Lecia informs us that "[o]n August 14, 2023, and August 23, 2023, Appellant filed requests to terminate the DVRO. . . .  Each request was summarily denied without hearing.  [¶]  On November 6, 2023, Appellant attempted to file an Order to Show Cause and Affidavit Re Contempt but the filing was refused by the clerks of the Superior Court."  It is unclear whether Lecia is arguing the court erred in denying her requests and refusing her permission to file the Order to Show Cause.  However, the Notice of Appeal Lecia filed indicates the order she is appealing was entered on August 1, 2023.  Because Lecia has not filed a notice of appeal regarding the court's actions after August 1, 2023, we need not—and indeed, cannot—consider whether the court erred in denying her August 14 or August 23 requests, or refusing her November 6 attempt to file an Order to Show Cause.

of the matter to be noticed or an explanation of why it was impracticable to do so.  As such, we deny her request.

**B.**     *Lecia Forfeited Any Claim That the Trial Court Was Required to Recuse Itself*

Lecia contends the trial court was required to recuse itself because it harbored bias against her.  She contends this bias is evidenced by the facts that: (1) the court held a hearing without Lecia's presence and without trying to ascertain her whereabouts; (2) the court "looked [Lecia] up" and discovered her disbarment; (3) the court issued the DVRO despite Jovita's failure to meet her burden of proof in her request for a DVRO.

"If a judge who should disqualify himself or herself refuses or fails to do so, any party may file with the clerk a written verified statement objecting to the hearing or trial before the judge and setting forth the facts constituting the grounds for disqualification of the judge.  The statement shall be presented at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification."  (Code Civ. Proc., § 170.3, subd. (c)(1).)

Although the record does not disclose when Lecia obtained a transcript of the DVRO proceedings, she quoted portions of Jovita's testimony in the "Order to Show Cause and Affidavit for Contempt" she attempted to file in November 2023.  Therefore, by November 2023, she was aware of the statements the court made, and the fact that the court held the hearing and did not recuse itself.  Yet nothing in the record indicates Lecia filed the statement required by Code of Civil Procedure section 170.3.  "It is axiomatic that arguments not raised in the trial court are forfeited on appeal."  (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.)

6

"Moreover, objections on such grounds [under Code of Civil Procedure sections 170.1 or 170.3] must be made at the 'earliest practicable opportunity after discovery of the facts constituting the ground for disqualification.' " (*Ibid.*) "We conclude that appellant's disqualification arguments are forfeited by [her] failure to raise them below." (*Ibid.*)

### C. *The Court Did Not Abuse Its Discretion in Granting the Restraining Order*

"Pursuant to the [Domestic Violence Prevention Act], a court may issue a protective order ' "to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved" upon "reasonable proof of a past act or acts of abuse." ' " (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 225.) "Domestic violence" includes "abuse perpetrated against" a "person related by consanguinity or affinity within the second degree." (Fam. Code, § 6211, subd. (f).) "Abuse" includes "any behavior that has been or could be enjoined pursuant to Section 6320." (Fam. Code, § 6203, subd. (a)(4); see also *id.* at subd. (b) ["Abuse is not limited to the actual infliction of physical injury or assault"].) Behaviors that can be enjoined pursuant to Section 6320 include "threatening," "harassing," and "disturbing the peace of the other party" or "in the discretion of the court, on a showing of good cause, of other named family or household members." (Fam. Code, § 6320, subd. (a).) "Disturbing the peace" includes "unreasonably engaging in any of the following: [¶] (1) Isolating the other party from friends, relatives, or other sources of support. [¶] (2) Depriving the other party of basic necessities. [¶] (3) Controlling, regulating, or monitoring the other party's

7

movements, communications, daily behavior, finances, economic resources, or access to services." (*Id.* at subd. (c).)

"The DVPA requires a showing of past abuse by a preponderance of the evidence." (*In re Marriage of Davila & Mejia, supra*, 29 Cal.App.5th at p. 226.) "We review the grant or denial of a request for a DVRO for abuse of discretion." (*Ibid.*) " ' "To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review." ' " (*Ibid.*)

Lecia argues the court erred in granting the DVRO because "[t]here was no showing on the record that Appellant engaged in domestic violence or abuse, within the meaning of section 6200 et seq." The record belies her claim. Jovita testified that Lecia repeatedly stated she needed to "get rid" of Jovita and tried to fight Jovita in her front yard. Further, Jovita informed the court that Lecia coaxed their 81-year-old mother to climb a six-foot fence, resulting in her falling to the other side. Additionally, Lecia sometimes whisked Sondra away without telling the other siblings where they were, resulting in Sondra not having her medication. These statements are substantial evidence Lecia was threatening and harassing Jovita, and disturbing the peace of Sondra, all of which constitute abuse under Family Code section 6203.

Lecia also argues the court abused its discretion in deciding not to review the video Jovita offered to show. Lecia has forfeited this argument by failing to raise the objection below because she was not present at the properly noticed hearing date. (See *People v. Saunders* (1993) 5 Cal.4th 580, 589–590 [" ' "An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted,

where an objection could have been, but was not, presented to the lower court by some appropriate method" ' "].)  Moreover, were we to consider her argument, we would conclude the court's decision to take Jovita's word about the contents of a video she was readily offering to show was well within the bounds of reason. (See, e.g., *Blueberry Properties, LLC v. Chow* (2014) 230 Cal.App.4th 1017, 1020 [" 'An abuse of discretion occurs only where it is shown that the trial court exceeded the bounds of reason.  [Citation.]  It is a deferential standard of review that requires us to uphold the trial court's determination, even if we disagree with it, so long as it is reasonable' "].)

Finally, Lecia appears to argue the court erred by failing to state its reasons for granting the DVRO apart from finding Jovita had met her burden.  But Lecia cites no authority stating the court was required to make such a statement.  Indeed, Family Code section 6340 states that "upon denying a petition under this part, [a court must] provide a brief statement of the reasons for the decision in writing or on the record." (Fam. Code, § 6340, subd. (b).)  The statute has no corresponding requirement when the petition is granted.[4]

---

[4] Lecia's citations to the contrary are inapposite because they address the requirements of other statutes. (*Abdelqader v. Abraham* (2022) 76 Cal.App.5th 186, 196 ["If the court determines the [Family Code section 3044] presumption has been rebutted, it must state the reasons for its decision in writing or on the record"]; *In re J.S.* (2011) 196 Cal.App.4th 1069, 1078 [Welfare and Institutions Code section 361.2 requires court to make finding "either in writing or on the record"]; *In re Abram L.* (2013) 219 Cal.App.4th 452, 463 [same].)

## DISPOSITION

The trial court's order is affirmed.  Respondent shall recover her costs on appeal.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.