Filed 5/19/25  Sisti v. Callahan CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL SISTI,<br><br>        Respondent,<br><br>    v.<br><br>ERIN CALLAHAN,<br><br>        Appellant. | D083817<br><br><br><br>(Super. Ct. No. 21FL009420S) |

APPEAL from orders of the Superior Court of San Diego County, James T. Atkins, Judge.  Affirmed.

Erin Callahan, in pro per, for Appellant.

No appearance for Respondent.

Erin Callahan, who is self-represented on appeal, challenges the family court's order denying her request for a domestic violence restraining order (DVRO) against her former boyfriend, Michael Sisti.  Specifically, she asserts the court erred by excluding the testimony of two expert witnesses and by preventing her from presenting evidence of abuse that occurred before the denial of her previous request for a restraining order.  Callahan also

challenges the family court's order imposing sanctions of $37,000 against her under Family Code section 271.[1] As we shall explain, we reject Callahan's arguments and affirm the family court's orders.

FACTUAL AND PROCEDURAL BACKGROUND

Callahan and Sisti lived together for several years and share one child. The couple separated in 2021, and in August of that year Sisti filed a petition for custody and support of their child. In December 2021, Callahan filed a request for a DVRO, which the court denied.

On August 18, 2023, Callahan filed another request for a DVRO against Sisti, seeking protection for Callahan, the parties' child, and Callahan's two older children. The request was filed in the central San Diego division of the Superior Court, and not Chula Vista, where the custody case was pending. In the petition, Callahan alleged Sisti was stalking her and had been abusive in the past. In her request, she alleged that Sisti trespassed on her property in September 2021, which scared her children. Callahan also stated that in October 2022, she turned in her car lease because she feared Sisti had installed a tracking device on the car and during a subsequent custody exchange of their child, she thought he followed her to see what car she was driving. Finally, she asserted that in June and July of 2023, Sisti had stalked her social media accounts using "alias accounts."

The Chula Vista division of the family court issued a temporary restraining order (TRO) and set a hearing on the DVRO for September 7, 2023. On August 23, 2023, Sisti's counsel filed a request for a firearm exemption from the temporary restraining order. In his declaration filed in support of the request, Sisti explained he was required to carry a firearm for his job as a customs officer with the Department of Homeland Security. Sisti

---

1    Subsequent undesignated statutory references are to the Family Code.

also explained that on December 7, 2022, Callahan had filed a request for order (RFO) seeking to modify child custody and visitation and in May 2023 had appeared ex parte requesting an evidentiary hearing on her RFO, which was scheduled for September 25–26, 2023, and October 19, 2023. Sisti also asserted Callahan had later withdrawn the RFO and that the court had vacated the hearing dates as a result.[2]

At the September 7, 2023 hearing on Callahan's request for the DVRO, Callahan was represented by counsel. During the hearing, Sisti's counsel alleged Callahan was attempting to judge-shop by withdrawing her RFO and then filing a request for DVRO in San Diego. Counsel further argued he had issued discovery requests to Callahan in July, but she had failed to disclose the addresses of her proposed witnesses so that depositions could be scheduled, or respond to Sisti's demand for expert witness information. Sisti's counsel also asserted Callahan was attempting to relitigate findings that were made by the court at the time it denied her initial request for a DVRO in 2021, and Callahan's new request for a DVRO did not allege any additional *abusive* conduct occurring after that denial.

Sisti's counsel requested the parties proceed with an evidentiary hearing on Callahan's DVRO request, or alternatively that the court dissolve the TRO issued on August 23, 2023 and set a later evidentiary hearing date. Callahan's counsel responded she was not ready to move forward with an evidentiary hearing. The court then indicated it would conduct the evidentiary hearing, or dissolve the TRO and Callahan could refile the request for a DVRO.

---

[2] The appellant's appendix Callahan submitted to this court is extremely limited, and does not include filings related to the RFO. The appendix also does not comply with the appellate record requirements set forth in California Rules of Court, rules 8.122 and 8.124.

3

Callahan's counsel agreed to proceed with the evidentiary hearing and called one of Callahan's experts, Barry Goldstein, to the stand. Sisti's counsel objected based on Callahan's failure to respond to his demand for expert witness information. The court then permitted Callahan's counsel to question Goldstein. When asked for his qualifications, Goldstein responded he was "a domestic violence author, speaker, advocate, and expert witness." After Callahan's counsel asked Goldstein to refer to his report, Sisti's counsel objected on the grounds that Goldstein had not been sufficiently qualified as an expert witness. The court agreed, finding the evidence of his qualifications was "insufficient at this point." In response to the ruling, Callahan's counsel stated she would move to her next witness. Before the next witness was called, the court ended the session, continued the evidentiary hearing to October 19, 2023, and denied a request by Sisti to dissolve the TRO.

At the continued evidentiary hearing, Sisti's counsel made a motion in limine to exclude testimony and evidence concerning events that occurred before the court denied Callahan's previous request for a DVRO on December 23, 2021. Sisti's counsel asserted the court had concluded Callahan was not a credible witness before denying her earlier request, and that it would be res judicata to relitigate the events that occurred before the denial. Callahan's attorney responded that under section 3044, the court could consider any relevant evidence that occurred within the past five years,

so res judicata did not apply in this circumstance.[3]  She further asserted the prior denial had been entered without prejudice.  The court sided with Sisti, and ruled it would "not hear any evidence or testimony regarding anything alleged to have occurred prior to December 23rd, 2021."  The court also found its earlier denial was made with prejudice, and that a minute order stating it was without prejudice was an error in the record.

Callahan's attorney then proceeded to call her second expert witness, Kate Amber.  As with Goldstein, Sisti's counsel objected, asserting Callahan had failed to respond to their demand for exchange of expert information and that Amber's testimony should be excluded under *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*) because Amber would rely solely on case-specific, hearsay testimony of Callahan.  Callahan's attorney responded she had provided Sisti's counsel with a witness list before the September hearing, and that she had also provided him Amber's report.  In addition, Callahan's counsel stated she was not prepared to address *Sanchez* and argued Sisti's counsel should have raised the issue before the hearing.  The court then tentatively ruled Amber's testimony was inadmissible under *Sanchez* and Callahan could brief the issue if the hearing was not concluded that day.

---

[3]     Section 3044, which is applicable to custody determinations, provides: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child, or against the child or the child's siblings, or against a person in subparagraph (A) of paragraph (2) of subdivision (a) of Section 3011 with whom the party has a relationship, there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Sections 3011 and 3020.  This presumption may only be rebutted by a preponderance of the evidence."  (§ 3044, subd. (a).)

Callahan then took the stand. She explained that after 2021, she and Sisti communicated primarily through an application used in custody cases called Talking Parents. Callahan testified she felt anxious around Sisti and that after exchanges of their child, he would inundate her with messages on Talking Parents about her inadequate parenting and his need for money from her. Callahan also testified Sisti had threatened to garnish her wages and to take action that jeopardized her nursing license if she refused to pay child support ordered by the court. She also testified she received hundreds of messages from Sisti about her failure to make their child available for FaceTime calls at agreed times. She told the court that on one occasion when she failed to make their child available for a scheduled call, Sisti contacted the police, who conducted a welfare check and determined the child was safe.

Callahan further testified that at a child exchange in October 2022, she parked far away from Sisti so that he would not see her car. Callahan explained she believed Sisti had placed a tracking device on her previous car and did not want him to see her new vehicle. Callahan said after she handed the child to Sisti, she walked back to her car and then when she got into the car, she saw Sisti driving towards her. Callahan testified Sisti followed her and was able to see what car she was driving, which she reported to police because it made her uncomfortable.

Callahan also testified she received notifications of suspicious activity on her Facebook account. She attributed the notifications to Sisti because he had submitted screen shots from her Facebook account in earlier court filings. In addition, Callahan told the court she suspected Sisti was involved in an incident when she was crossing the border from Mexico to the United States when border officials told her that her passport had been reported stolen. Callahan also testified she believed her child with Sisti was afraid of

6

him, and that the child displayed fear after interacting with Sisti. However, Callahan also stated that after phone calls with Sisti, the child "was usually fine" and "didn't hold on to anything."

Callahan then called her oldest child to the stand. Instead of permitting the 14-year-old minor to testify, the court recommended Callahan's counsel provide an offer of proof. Callahan's counsel stated the child's testimony primarily related to conduct before December 2021, which she acknowledged the court had precluded. The court then stated it would accept an offer of proof that the minor's testimony would support Callahan's description of the child exchange in October 2022.

Callahan's counsel then again asserted she should be permitted to introduce the testimony of her expert, Amber, whose opinions were based on her review of the case file and her evaluation of Callahan. Sisti's counsel argued the testimony was improper because it was based on evidence the court excluded and because the proffered testimony related case-specific hearsay. Callahan's counsel then abandoned her position, and stated she would submit on the evidence and argument that had been presented.

Sisti's counsel then moved to dismiss the requested DVRO, arguing Callahan had not met her burden to show abuse that would support the imposition of a DVRO. Callahan's counsel responded that the evidence had sufficiently shown she was harassed by Sisti, specifically by threatening her professional license, contacting the police unnecessarily to conduct a welfare check, monitoring her social media, and by following her car during the October 2022 child exchange. Sisti's counsel responded that none of the conduct identified by Callahan in her testimony rose to the level of abuse or stalking. He also noted that Sisti had no ability to affect Callahan's professional licenses.

7

The court agreed with Sisti, denying Callahan's request for the DVRO. The court found Callahan had not shown Sisti committed domestic abuse and dissolved the existing TRO.

The court then turned to the hearing on Sisti's request for sanctions under section 271, which was not reported. After the hearing, the court took the matter under submission. On November 8, 2023, the court issued a minute order granting the motion for sanctions, finding Callahan's conduct had frustrated the policy set forth in section 271 to promote settlement and, where possible, reduce the costs of litigation. The court also found Sisti's request for $113,936 in attorney's fees was excessive in light of Callahan's income, assets and liabilities, and instead ordered her to pay Sisti $37,000 in attorney's fees in monthly installments of $750.

Callahan filed notices of appeal from the October 19, 2023 minute order denying her request for a DVRO, a minute order issued on October 31, 2023 directing the parties to select a mental health counselor for Callahan and the parties' child, and the November 8, 2023 order imposing sanctions under section 271.[4]

## DISCUSSION

Callahan is self-represented on appeal. In her appellate brief, Callahan asserts the family court erred by preventing her from introducing the testimony of Goldstein and Amber, and by foreclosing testimony about events

---

[4] Callahan does not address the October 31, 2023 minute order in her briefing and neither the order nor related documents are included in the appellant's appendix.

that occurred prior to December 2021.  She also asks this court to reverse the sanctions imposed on her under section 271.[5]

I

*General Legal Standards*

Under the Domestic Violence Prevention Act (DVPA) (§ 6200 et seq.), a court may issue a protective order " 'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' upon 'reasonable proof of a past act or acts of abuse.' " (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782.)  As relevant here, the DVPA defines domestic violence as abuse of a person with whom the abuser has had a dating relationship or the child of a party.  (§ 6211, subds. (c) & (e).)  Abuse includes placing a person "in reasonable apprehension of imminent serious bodily injury to that person or to another" or engaging in "any behavior that has been or could be enjoined pursuant to Section 6320."  (§ 6203, subd. (a)(3), (4).)  Enjoined conduct includes molesting, striking, stalking, threatening, and harassing.  (§ 6320, subd. (a).)  "The DVPA requires a showing of past abuse by a preponderance of the evidence."  (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226 (*Davila*).)  The statute is "broadly construed in order to accomplish [its] purpose" of preventing acts of domestic violence.  (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498.)

We review the trial court's grant or denial of a DVPA restraining order request for abuse of discretion.  (*Davila, supra*, 29 Cal.App.5th at p. 226.)  In

---

[5]    Callahan's brief also contains some suggestions that she was aggrieved by the family court's failure to alter the custody arrangement in place for the parties' child during the DVRO hearing.  There is no indication in the record that custody was adjudicated by the court during the DVRO proceeding and the orders from which Callahan appealed contain no custody findings.  Accordingly, the issue of custody is not before this court in this appeal.

addition, if an abuse of discretion is shown, the appellant must further establish the error was prejudicial. The California Constitution " 'prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial.' " (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108.) The rule "applies to both constitutional and nonconstitutional errors. [Citation.] It 'empower[s]' appellate courts 'to examine "the entire cause, including the evidence," ' and 'require[s]' them 'to affirm the judgment, notwithstanding error, if error has not resulted "in a miscarriage of justice." ' " (*Ibid*.)

In addition, although self-represented, we may not excuse Callahan from following the rules of appellate procedure. (See *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 31 [" 'as is the case with attorneys, [self-represented] litigants must follow correct rules of procedure' "]; accord *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 (*Nwosu*) [a self-represented party " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys' "].) A trial court's judgment or order is presumed correct and it is the appellant's burden to affirmatively show error on appeal. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' "]; accord *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)

To make this showing, the appellant must present meaningful legal analysis supported by citations to facts in the record and, if possible, authority to support the claim of error. (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457; see Cal. Rules of Court, rule 8.204(a)(1)(C) [briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"]; *id*.,

(a)(1)(B) [briefs must state each "point under a separate heading or subheading … and support each point by argument and, if possible, by citation of authority"].)[6]  In addition, the appellant's factual summary must be limited to "significant facts … in the record" (rule 8.204(a)(2)(C); *CIT Group/Equipment Financing, Inc. v. Super DVD, Inc.* (2004) 115 Cal.App.4th 537, 539, fn. 1 ["it is well established that a reviewing court may not give any consideration to alleged facts that are outside of the record on appeal"]) and must include " ' "*all* the material evidence on the point and *not merely* [his or her] *own evidence*" ' " (*Nwosu, supra*, 122 Cal.App.4th at p. 1246).

The appellant also must present an "adequate record" for review. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574–575 (*Ballard*).)  Rule 8.122, subdivision (b) sets out the required contents of an appellant's appendix or clerk's transcript.  (Rule 8.124(b).)  Among other requirements, it "must" include "[a]ny … document filed … in the case in superior court" pertaining to the issues on appeal (rule 8.122(b)(3)(A)); and "[a]ny exhibit admitted in evidence, refused, or lodged" (*id.*, (b)(3)(B)).

II

*Expert Testimony*

Callahan first argues the court erred by preventing her from introducing the testimony and reports of two experts in domestic abuse because they would relay case-specific information in violation of *Sanchez*.

"Evidence Code section 801 allows an expert to render an opinion '[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that

---

[6]    Subsequent undesignated rule references are to the California Rules of Court.

11

is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion.' (*Id.*, subd. (b).) Evidence Code section 802 states that an expert may 'state on direct examination the reasons for his opinion and the matter (including, in the case of an expert, his special knowledge, skill, experience, training, and education) upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion.' " (*In re Marriage of Lietz* (2024) 99 Cal.App.5th 664, 672 (*Lietz*).)

In *Sanchez*, the California Supreme Court "rejected the premise that expert testimony on case-specific information does not relate hearsay. (*Sanchez, supra*, 63 Cal.4th at p. 683.) 'If an expert testifies to case-specific out-of-court statements to explain the bases for his opinion, those statements are necessarily considered by the jury for their truth, thus rendering them hearsay. Like any other hearsay evidence, it must be properly admitted through an applicable hearsay exception. Alternatively, the evidence can be admitted through an appropriate witness and the expert may assume its truth in a properly worded hypothetical question in the traditional manner.' (*Id.* at p. 684, fn. omitted.) 'What an expert cannot do,' the court concluded, 'is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception.' " (*Lietz, supra*, 99 Cal.App.5th at p. 673.)

Here, the family court did not reject Goldstein's testimony based on *Sanchez*. Rather, Callahan's counsel excused him from the stand when the court found he was not qualified to provide his opinions. Under Evidence Code section 720, subdivision (a), "a person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient

12

to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert." The record shows that Goldstein did not discuss his special knowledge, skill, experience, training, or education that qualified him as an expert. Rather, he stated only that he was "a domestic violence author, speaker, advocate, and expert witness." When the family court noted that Goldstein's qualifications were "insufficient at this point," Callahan's counsel abandoned him as a witness rather than question him about his qualifications. Callahan makes no argument that this ruling was in error. (See *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 [It is a "cardinal rule of appellate review that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown."].)

Similarly, with respect to Amber's testimony, after the court tentatively ruled her testimony was improper under *Sanchez*, Callahan's counsel abandoned her argument that *Sanchez* was not applicable. Instead, counsel stated she would submit on the evidence that had been presented and move forward without Amber's testimony. Callahan's counsel then proceeded to argue that the evidence presented showed Callahan had been the victim of abuse, which supported the imposition of the DVRO. As with Goldstein, by failing to maintain her objection to the court's finding that Amber's testimony was improper under *Sanchez*, Callahan waived such argument on appeal. (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 378 ["A party may be deemed 'to have *waived* a claim of error either by affirmative conduct or by failure to take proper steps in the trial court to avoid or cure the error.' "].)

Accordingly, we reject Callahan's appellate contentions that the court erred by excluding Amber's and Goldstein's opinions.

## III

### *Res Judicata*

Callahan next contends the court erred by precluding her from introducing evidence concerning events before the denial of her prior request for a DVRO in December 2021.

" ' "Res judicata" describes the preclusive effect of a final judgment on the merits. Res judicata, [also known as] claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. … Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause … may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action.' " (*Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 671.) "The doctrine [of res judicata] promotes judicial economy and avoids piecemeal litigation by preventing a plaintiff from ' " 'splitting a single cause of action or relitigat[ing] the same cause of action on a different legal theory or for different relief.' " ' " (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 727.) Res judicata "bar[s] claims that were, or should have been, advanced in a previous suit involving the same parties." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–824 (*DKN Holdings*).)

Claim preclusion "arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*DKN Holdings, supra*, 61 Cal.4th at p. 824.) Here, contrary to Callahan's assertion, each element of claim

14

preclusion was satisfied. In the prior request for DVRO and the present, Callahan sought to impose a restraining order against Sisti for domestic violence that she alleged had occurred in 2019, 2020 and 2021. After the first request, the court entered a final order denying the request with prejudice. Accordingly, the family court did not err by finding res judicata precluded Callahan from relitigating the requested DVRO as it related to events occurring before the entry of the first order.

Callahan argues that the resolution of the earlier DVRO should not have precluded her from presenting additional evidence in this proceeding because she discovered new evidence after the December 2021 order was entered, making the issues different. Callahan also argues that because she was self-represented during the first DVRO proceeding, she was not properly prepared to present her case. These arguments are not persuasive. Callahan provides no citations to the record to support her assertion that she had new evidence to present that was not available at the earlier hearing. As a result, we cannot adequately evaluate this argument. (See *Ballard, supra*, 41 Cal.3d at p. 574 ["It is well settled, of course, that a party challenging a judgment has the burden of showing reversible error by an adequate record."].)

Further, she has not cited any legal authority to support her arguments.[7] On the record before this court, Callahan has not shown that the family court erred by preventing her from presenting evidence that formed the basis for the court's December 2021 order denying her requested DVRO.

Finally, even if the court did err by applying the doctrine of res judicata, Callahan has not presented any argument addressing how this

[7] Callahan does cite several cases in her brief, but none support the reversal she requests and several are not appropriately relied on by this court. For example, she references an unpublished opinion, *In re Marriage of Daisy and Mark P.*, E068889 (May 8, 2019), in which the family court reversed a court's order denying a request for a DVRO under the DVPA based on the court's failure to consider evidence from a prior restraining order proceeding in which the self-represented litigant was not provided a full opportunity to present her case. In addition to the fact that this unpublished opinion cannot be relied on by this court (see rule 8.1115), the case is distinguishable. Although both Callahan and the appellant in that case were self-represented in earlier DVRO proceedings, unlike the appellant there, Callahan has not provided this court with a sufficient record to support her assertion that she was not allowed to present evidence in the earlier proceeding.

Callahan also cites *Boblitt v. Boblitt* (2010) 190 Cal.App.4th 603 in a section of her brief asserting that the prior DVRO proceeding was not a final adjudication on the merits. *Boblitt*, however, addressed whether a prior decision in a marital dissolution case, in which the wife presented evidence of domestic abuse to support her claim for spousal support under sections 4320 and 4330, could serve to preclude a civil tort claim for damages based on the domestic abuse. The *Boblitt* court reversed the trial court's decision finding claim preclusion, holding the husband had not met his burden to show the prior dissolution proceeding was final, or that the causes of action were the same. In so holding, the court stated sections 4320 and 4330, which "require[d] a family court to consider evidence of domestic violence in determining whether an award of spousal support is appropriate, and if so, how much support is just and reasonable, does not seek to vindicate the primary right to be free from personal injury, as a tort action for domestic violence does." (*Id*. at p. 613.) Unlike *Boblitt*, Callahan's 2023 request for DVRO sought to upend the court's 2021 denial order based on litigation of the *same* claim and *same* underlying facts.

16

alleged error prejudiced her. Without this showing, we are unable to overturn the family court's decision to prevent her from introducing the same evidence she presented in the earlier DVRO proceeding. (See *F.P. v. Monier, supra*, 3 Cal.5th at p. 1107 ["There shall be no presumption that error is prejudicial, or that injury was done if error is shown."].)

IV

*Sanctions Award*

Callahan's final contention is that the court erred by awarding sanctions to Sisti against her under section 271.[8] Callahan, however, has not provided a reasoned argument for her claim. She asserts only that "the court continues to enable Mr. Sisti by giving him sole-decision making authority and forcing [Callahan] to have to come to court when he does not follow the court's orders." She claims without any specific detail that "[t]he court does little to adjudicate matters fairly and efficiently." These unsupported assertions do not support reversal of the court's sanction order.

DISPOSITION

The orders are affirmed.

McCONNELL, P. J.

WE CONCUR:

IRION, J.

KELETY, J.

---

[8]     Section 271 states, in pertinent part, "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which any conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award." (§ 271, subd. (a).)

18